```
                   DISTRICT COURT OF THE VIRGIN ISLANDS
                   DIVISION OF ST. THOMAS AND ST. JOHN

MRL Development I, LLC and MICHAEL R. )
LUCHT,                                )
                                      )
              Plaintiffs,             )
                                      )          Civil No. 2013-48
         v.                           )
                                      )
WHITECAP INVESTMENT CORP., d/b/a      )
PARADISE LUMBER; PUTNAM LUMBER &      )
EXPORT CO.; PUTNAM FAMILY PROPERTIES, )
INC.; and GREAT SOUTHERN WOOD         )
PRESERVING, INC.,                     )
                                      )
              Defendants.             )
_____)
WHITECAP INVESTMENT CORP., d/b/a      )
PARADISE LUMBER,                      )
                                      )
              Cross-claimant,         )
                                      )
         v.                           )
                                      )
PUTNAM LUMBER & EXPORT CO.; PUTNAM    )
FAMILY PROPERTIES, INC.; and GREAT    )
SOUTHERN WOOD PRESERVING, INC.,       )
                                      )
              Cross-claim defendant.  )
_____)
PUTNAM FAMILY PROPERTIES, INC.,       )
                                      )
              Cross-claimant,         )
                                      )
         v.                           )
                                      )
WHITECAP INVESTMENT CORP., d/b/a      )
PARADISE LUMBER; and GREAT SOUTHERN   )
WOOD PRESERVING, INC.,                )
                                      )
              Cross-claim defendants. )
_____)
```

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 2

|  | ) |
| --- | --- |
| **PUTNAM LUMBER & EXPORT COMPANY,** | ) |
|  | ) |
| **Cross-claimant,** | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **WHITECAP INVESTMENT CORP., d/b/a** | ) |
| **PARADISE LUMBER; and GREAT SOUTHERN** | ) |
| **WOOD PRESERVING, INC.,** | ) |
|  | ) |
| **Cross-claim defendant.** | ) |
|  | ) |

**ATTORNEYS:**

**David A. Bornn, Esq.**
The Bornn Firm, PLLC
St. Thomas, VI
**Paul Martin Platte, Esq.**
Columbia, SC
    *For the Plaintiffs* ,

**Chad C. Messier, Esq.**
**Alex Moskowitz, Esq.**
Dudley, Topper & Feuerzeig
St. Thomas, VI
    *For the defendant/cross-claimant Whitecap Investment Corp.*
    *d/b/a Paradise Lumber,*

**Lisa M. Komives, Esq.**
Bolt Nagi PC
St. Thomas, VI
**Robert A. Carlson, Esq.**
Lee, Hernandez, Landrum, Garofalo and Blake APC
Miami, FL
    *For the defendants/cross-claimaints Putnam Lumber & Export*
    *Co. and Putnam Family Properties, Inc,*

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 3

**Daryl C. Barnes, Esq.**
Bryant, Barnes, Moss & Beckstedt
St. Croix, VI
**Stewart Andrew Kelly, Esq.**
Lightfoot, Franklin & White, LLC
Birmingham, AL
> *For the defendant/cross-claim defendant Great Southern Wood Preserving, Inc.*

## MEMORANDUM OPINION

**GÓMEZ, J.**

Before the Court are the motions of the defendant/cross-claim defendant Great Southern Wood Preserving ("GSWP") to dismiss all claims and cross-claims asserted against it for want of personal jurisdiction.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

GSWP is an Alabama lumber wholesaler. It operates principally in Alabama. In addition to selling wood directly, it also provides chemical and pressure treatments to prevent lumber from decaying. The ostensible purpose of such treatments is to render the lumber safe for use in buildings.

From in or about 2003 until in or about 2009, GSWP regularly sold treated lumber and provided lumber-treatment services to the defendant/cross-claimant Putnam Family Properties, Inc., doing business as Putnam Lumber and Export

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 4

Company ("Putnam Lumber"). Putnam Lumber, a Florida corporation, is itself a lumber retailer. Putnam Lumber regularly sold lumber to, among others, the defendant/cross-claimant Whitecap Investment Corporation, doing business as Paradise Lumber ("Paradise Lumber").

Paradise Lumber is a lumber retailer operating in St. John, United States Virgin Islands. It sold lumber that it had purchased from Putnam Lumber, and which had been treated by GSWP, to various consumers in St. John. These consumers used the lumber in their sundry buildings. Two of these consumers are the plaintiffs in the instant case, MRL Development I, LLC and Michael R. Lucht (collectively "MRL").

MRL claims that the GSWP-treated lumber prematurely decayed, causing damage to its house, into which the lumber had been incorporated.

After receiving complaints from consumers like MRL about the GSWP-treated lumber, on December 29, 2010, Paradise Lumber initiated an action against, among others, GSWP in this court. That action is captioned *Whitecap Investment Corp. v. Putnam Lumber & Export Co.*, Civ. No. 2010-139 (the "Paradise Lumber Case").

MRL initiated this matter on February 15, 2013, in the Superior Court of the Virgin Islands.  The amended complaint

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 5

named GSWP, Paradise Lumber, and Putnam Lumber as defendants. Thereafter, on April 15, 2013, Paradise Lumber filed its answer and cross-claims against GSWP and Putnam Lumber.

On May 14, 2013, GSWP removed the action to this Court. That same day, GSWP moved to dismiss both the complaint and Paradise Lumber's cross-claims on the grounds that this Court lacks personal jurisdiction over GSWP.

On June 21, 2013, Putnam Lumber filed cross-claims against the other defendants, including GSWP. Thereafter, on July 22, 2013, GSWP moved to dismiss Putnam Lumber's cross-claims as well.

All of GSWP's motions to dismiss are premised on the argument that the Court lacks personal jurisdiction over GSWP. As such, all are addressed in this memorandum opinion.

## II. <u>DISCUSSION</u>

### A.   <u>Factual Challenge</u>

Once challenged, " '[t]he burden of demonstrating the facts that establish personal jurisdiction,' falls on the plaintiff." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). A challenge to a court's exercise of personal jurisdiction may be either facial or factual. In a facial challenge, a court must take all allegations in the complaint as

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 6

true and the plaintiff "need only establish a prima facie case

of personal jurisdiction." *O'Connor v. Sandy Land Hotel Co.*, 496

F.3d 312, 316 (3d Cir. 2007).

However, if the challenge arises after the allegations in

the complaint have been controverted, "the plaintiff bears the

burden to prove, by a preponderance of the evidence, facts

sufficient to establish personal jurisdiction." *Carteret Sav.*

*Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992) (citing

*Time Share Vacation v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 62

(3d Cir. 1984)). The plaintiff may discharge this burden by

producing "affidavits or other competent evidence that [show

that] jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*,

86 F.3d 1287, 1302 (3d Cir. 1996).

**B.**     <u>**Statutory and Due Process Considerations**</u>

"Under Federal Rule of Civil Procedure 4(k), a District

Court typically exercises personal jurisdiction according to the

law of the state where it sits." *O'Connor*, 496 F.3d at 316; *see*

*also* Fed. R. Civ. P. 4(k)(1)(A).

If the exercise of personal jurisdiction comports with

local law, a court must next ask whether, under the Due Process

Clause of the United States Constitution, the defendant has

"certain minimum contacts with . . . [the forum state or

territory] such that the maintenance of the suit does not offend

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 7

traditional notions of fair play and substantial justice." *Int'l*

*Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Due Process Clause recognizes two types of personal

jurisdiction: general and specific. *See O'Connor*, 496 F.3d at

317 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*,

466 U.S. 408, 414–15 & n.9 (1984)). "A court may exercise

general jurisdiction over a defendant where he or she has

'continuous and systematic' contacts with the forum, whether or

not those contacts are related to the plaintiff's cause of

action." *Metcalfe*, 566 F.3d at 334 (citing *Helicopteros*

*Nacionales de Colombia*, 466 U.S. at 416; *BP Chems. Ltd. v.*

*Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000)).

"Specific jurisdiction exists if the defendant has

' "purposefully directed" his activities at residents of the

forum and the litigation results from alleged injuries that

"arise out of or relate to" those activities.' " *Metcalfe*, 566

F.3d at 334 (quoting *Burger King Corp.*, 471 U.S. 462, 472 (1985)

(quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774

(1984); *Helicopteros Nacionales de Colombia*, 466 U.S. at 414)).

" 'If the defendant "maintain[s] continuous and substantial

forum affiliations," then general jurisdiction exists. If the

defendant's contacts fall short of that standard, then at least

one contact must give rise or relate to the plaintiff's

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 8

claim.' " *Metcalfe*, 566 F.3d at 334 (quoting *O'Connor*, 496 F.3d

at 321 (quoting *Dollar Sav. Bank v. First Sec. Bank of Utah*, 746

F.2d 208, 212 (3d Cir. 1984)) (citing *Grimes v. Vitalink*

*Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)) (alteration

original)).

### III. <u>ANALYSIS</u>

### A. <u>Virgin Islands Long-Arm Statute</u>

"A district court sitting in diversity may assert personal

jurisdiction over a nonresident defendant to the extent allowed

under the law of the forum state." (citing *Time Share Vacation*

*Club v. Atl. Resorts, Ltd.*, 735 f.2d 61, 63 (3d Cir. 1984)); *see*

*also* Fed. R. Civ. P. 4(k)(1)(A). In the Virgin Islands,

establishing personal jurisdiction requires a "two-part

analysis." *Metcalfe*, 566 F.3d at 330. "First, there must be a

statutory basis for exercising jurisdiction over the nonresident

defendant in accordance with the Virgin Islands Long-Arm

Statute, V.I. CODE ANN. tit. 5, § 4903." *Id.* "[S]econd, the

nonresident defendant must have minimum contacts with the Virgin

Islands sufficient to satisfy constitutional due process." *Id.*

(citing *Kelvin Manbodh Asbestos Litig. Series*, 47 V.I. 267, 279

(Super. Ct. 2005) ("[T]he Court's *in personam* jurisdiction is

limited first by the terms of the [long-arm] statute and then by

the Due Process Clause of the Fourteenth Amendment of the

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 9

Constitution."); *Godfrey v. Int'l Moving Consultants, Inc.*, 18

V.I. 60, 66 (D.V.I. 1980) ("The proper method of testing

jurisdiction over a nonresident defendant is to first determine

whether the long-arm statute authorizes the Court to exercise

its adjudicatory powers, and then, secondly, to decide if such

an exercise is constitutionally permissible.")

The Virgin Islands Long-Arm Statute provides, in pertinent

part, that

> A court may exercise personal jurisdiction
> over a person, who acts directly or by an
> agent, as to a claim for relief arising from
> the person's
>
> (1) transacting  any  business  in  this
>     territory;

V.I. CODE ANN. tit. 5, § 4903(a) ("Section 4903(a)").

To evaluate whether there is personal jurisdiction under

the Virgin Islands Long-Arm Statute, the Court must "determine

(1) whether the defendant's contacts meet one of the categories

under section 4903(a) and then (2) whether the plaintiff's claim

'arises from' that contact." *Molloy v. Indep. Blue Cross*, 56

V.I. 155 (S. Ct. 2012). Here, there is no dispute that GSWP's

putative contacts with the Virgin Islands are also what give

rise to the present action--namely, the treating of lumber

destined for the Virgin Islands and the selling of treated

lumber. Thus, the Court's analysis will first focus on

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 10

determining whether GSWP's conduct is sufficient to constitute "transacting business."

"Under subsection (a)(1), the term 'transacting any business' can be satisfied by only a single act which in fact amounts to the transaction of business within the state or territory." *Fin. Trust Co. v. Citigroup*, 268 F. Supp.2d 561, 567 (D.V.I. 2003) (finding it sufficient under subsection (a)(1) that the defendant entered into a contract with a Virgin Islands resident and solicited the plaintiffs while they were in the Virgin Islands). "[T]ransacting business is a term that connotes activity that is less than doing business, but more than an inconsequential act." *Manbodh Asbestos Litig.*, 47 V.I. at 283; *see also Paradise Motors, Inc. v. Toyota de P.R., Corp.*, 314 F. Supp. 2d 495, 498 & n.4 (D.V.I. 2004) (finding participation in some business activity in the Virgin Islands coupled with the receipt of substantial revenue from the activity sufficient to establish the application of subsection (a)(1) of the long-arm statute).

In *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (3d Cir. 2009), Richard and Cynthia Metcalfe (collectively, the "Metcalfes") residents of the Virgin Islands, purchased a boat from Renaissance Marine, Inc. ("Renaissance"), a company based in Florida. The Metcalfes claimed that Renaissance breached the

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 11

contract of sale, and brought suit in this Court. Renaissance
sought to dismiss the action, claiming lack of personal
jurisdiction. In response, the Metcalfes asserted that they
"exchanged phone calls, faxes, and emails with Renaissance while
they were in the Virgin Islands during the process of
negotiating the sale of the [boat]." *Id.* at 332. The Third
Circuit held that, "[b]ecause one single act can constitute
'transacting business,' surely repeated reciprocal
communications between a buyer in the Virgin Islands and a
seller located elsewhere which culminate in an agreement for
sale of an item at a cost of nearly $85,000 also satisfies the
standard under subsection (a)(1)." *Id.*

    Similarly, in *Molloy v. Blue Cross Blue Shield*, 56 V.I. 155
(S. Ct. 2012), Gary and Christa Molloy (collectively, the
"Molloys"), residents of the Virgin Islands, brought suit
against Blue Cross Blue Shield Association ("BCBSA") in the
Superior Court of the Virgin Islands. The gravamen of their
complaint was that BCBSA was liable for failing to provide
timely air evacuation services when their infant son suffered
complications caused by his premature birth. Significantly, the
Molloys had no relationship with BCBSA. Rather, they had entered
into a health-insurance agreement with Blue Cross Blue Shield of
the Virgin Islands ("BCBSVI"), an independent company that had

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 12

licensed the "Blue Cross Blue Shield" brand name from BCBSA.

Despite this, the Supreme Court of the Virgin Islands held that

BCBSA had transacted business in the Virgin Islands within the

meaning of Section 4903(a)(1). The court noted that BCBSA had

lobbied Congress in order to secure contracts for BCBSVI to

provide insurance to federal employees in the Virgin Islands.

The court further noted that BCBSA received substantial income

from BCBSVI's licensing fees, a portion of which were derived

from revenue produced by the contracts with federal employees.

The Court found that "Acting as an agent for an insurance

company in the Virgin Islands . . . with the specific purpose of

garnering contracts to cover Virgin Islands citizens qualifies

as more than an inconsequential act, and indicates BCBSA's

intent to transact business within the Virgin Islands." *Id.* at

176.[1]

---

[1] The Virgin Islands Supreme Court ultimately concluded that, although BCBSA's contacts with the Territory indicated an intent to transact business therein, the plaintiff's claims did not "arise from" those contacts. This was so because BCBSA's contacts were not a "but-for" cause of the Molloys claims. Indeed, the Molloys could very well have sustained the same injuries if BCBSA had engaged in no lobbying on behalf of BCBSVI or received no revenue from its licensing arrangement.

As noted above, the gravamen of Paradise Lumber's complaint is that GSWP failed to properly treat certain lumber which was ultimately sold to Paradise Lumber. If none of GSWP's lumber wound up in the Virgin Islands, there would be no basis for Paradise Lumber's claims against GSWP.  Thus, unlike in the Molloys' case, the conduct, if it rose to the level of a transaction, would be a but-for cause of the claims.

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 13

Here, GSWP argues that it does not and has not transacted any business in the Virgin Islands. In support of this contention, it offers the affidavit of Bill Freeman ("Freeman"). Freeman is a general manager at a GSWP lumber-processing facility. He avers that GSWP "has not ever marketed, distributed, or sold treated wood products in the United States Virgin Islands." (GSWP's Ex. B ¶ 4.) He further avers that the lumber at issue in this case was simply "treated per specifications provided by Putnam Lumber, and [GSWP] had no involvement with sales by Putnam Lumber of the wood to any end users or retailers." (GSWP's Ex. B ¶ 4.) More generally, he avers that

> [GSWP] has never (1) been licensed to do business in the U.S. Virgin Islands; (2) maintained any offices in the U.S. Virgin Islands; (3) employed any persons who reside in the Virgin Islands; (4) advertised in the Virgin Islands; (5) maintained a telephone number in the U.S. Virgin Islands; (6) owned any assets in the U.S. Virgin Islands; (7) held any bank accounts in the U.S. Virgin Islands; (8) transacted any business in the U.S. Virgin Islands; (9) derived substantial revenues from goods manufactured for or sold by [GSWP] to Putnam and used or consumed in the U.S. Virgin Islands or services rendered by [GSWP} in the U.S. Virgin Islands.

(GWSP's Ex. B ¶ 5.)

In response, MRL directs the Court to the deposition of Freeman, in which he admits that GSWP received over $2,000,000

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 14

in revenue from lumber sales to Putnam Lumber. (Tr. of Dep. of

Freeman 695:21-23.) Out of these total sales, GSWP received

$432,884.72 for lumber or the treatment of lumber which was sold

in the Virgin Islands. (Putnam Lumber's Resp. to

Interrogatories, Ex. F, at 4.) This amount of revenue certainly

qualifies as "substantial." *See Metcalfe* 566 F.3d at 332

(finding the receipt of $85,000 in revenue to be "substantial").

What is less clear is whether GSWP engaged in any business

activity in the Virgin Islands to receive this substantial

revenue. Michael Simerly ("Simerly"), GSWP's corporate

representative, admits that in or about 2008, he became aware

that Virgin-Islands customers of Putnam Lumber were complaining

about the quality of GSWP's lumber. (Tr. of Dep. of Simerly

36:25-37:17.) On July 22, 2008, Simerly sent an email to Michael

Noble ("Noble"), an employee of Putnam Lumber, in which he

stated: "[A]ny material that goes over seas [*sic*] does not carry

a warranty, BUT we can help you out some with this issue. How

many pieces is your customer talking about?" (Pls.' Ex. 22)

Noble replied:

> I'm not sure that the U.S. Virgin Islands is
> considered overseas. are [*sic*] you saying
> that the .15 treatment we bought on 5/4"
> decking which is approved in the United
> States is not covered in the United States
> Virgin Islands? would [*sic*] there be any
> reason it would disintegrate there and not
> here? Per our conversation, every piece of

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 15

> 5/4x6/16' RED treated was purchased from
> Great Southern and sold to our only client
> in St. John, U.S.V.I.

(Pls.' Ex. 22.) On October 20, 2009, Simerly again emailed

Noble, asking, "Do you have any TSO items in the works coming to

Jesup or any stock items we can quote into Jax? Have you been

loading any flat racks out of Jax, or are the islands still

slow?" (Paradise Lumber's Ex. V.) Simerly has subsequently

stated that his reference to "islands" in this email "was just a

generic islands as far as the Caribbean." (Tr. of Dep. of

Simerly, 37:16-17.)

Confronted with the same evidence in the Paradise Lumber

Case, the Court drew the following conclusions:

> Th[e] evidence suggests that GSWP was aware
> Putnam Lumber did business in the Virgin
> Islands. Moreover, it appears that on at
> least one occasion GSWP sought to do
> business with Putnam Lumber specifically
> because Putnam Lumber sold lumber in the
> Virgin Islands.
>
> This case is thus at least one degree
> removed from *Metcalfe*. There, as here, the
> defendant, Renaissance, never set foot on
> Virgin Islands soil. However, Renaissance
> did engage in several direct communications
> with the plaintiffs, who at that time were
> located in the Virgin Islands. Here, by
> contrast, GSWP never dealt directly with a
> purchaser of its goods located in the Virgin
> Islands. It never sent any communications to
> the Virgin Islands nor received any.
> Instead, it dealt entirely with an
> intermediary--Putnam Lumber--which was not
> itself located in the Virgin Islands.

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 16

Moreover, unlike *Metcalfe*, there is no evidence GSWP was aware of the destination of the lumber prior to 2008, when it conducted the majority of its transactions with Putnam.

However, the mere fact that GSWP never did business directly with the plaintiffs is not dispositive. As the Supreme Court of the Virgin Islands has made clear, the determinative inquiry is whether the defendant's conduct evinced "an intent to transact business within the Virgin Islands." *Molloy*, 56 V.I. at 176. In that case, the defendant, BCBSA, did not directly engage in any business with any person in the Virgin Islands. Yet by acting as an agent for a Virgin Islands entity, and receiving substantial revenues from that entity, it was held to have transacted business.

Here, there is evidence that, at least by 2008, GSWP was aware that some portion of the lumber it provided to Putnam Lumber was being shipped to the Virgin Islands. At the same time, GSWP continued to provide lumber and lumber treatment services to Putnam Lumber up until 2009. Specifically, GSWP received $79,575.41 in revenue from lumber that was sold by Putnam in the Virgin Islands in 2008 and 2009. Indeed, the evidence suggests that, on prior occasions, Putnam Lumber specifically requested certain types of lumber from GSWP for resale to the Virgin Islands. It also appears that on at least one occasion, GSWP reached out to Putnam Lumber for the purpose of selling wood to the Virgin Islands, although the evidence as to this point is disputed.

The preponderance of the admittedly limited evidence tends to show that GSWP provided lumber or the treatment of lumber to Putnam, with the knowledge that a portion of this lumber would be resold to the Virgin

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 17

       Islands. The evidence further shows that
       GSWP was aware of the destination of this
       lumber prior to at least some of the sales
       it made in 2008 and 2009. Although GSWP did
       not deal directly with a Virgin Islands
       citizen or entity, its position is
       nonetheless similar to that of BCBSA in the
       *Molloy* case. GSWP, like BCBSA, engaged in
       conduct that it knew would bring about
       substantial revenue from the Virgin Islands.
       Indeed, the evidence suggests that GSWP was
       specifically informed by Putnam Lumber that
       certain shipments of lumber would ultimately
       be resold to the Virgin Islands.

       Moreover, as in *Metcalfe*, there is some
       evidence--albeit disputed--that GSWP
       warranted that its lumber would be free of
       defects. This further supports the inference
       that, particularly after it became aware of
       the ultimate destination of the lumber, that
       GSWP intended to have a relationship with
       residents of the Virgin Islands.

*Whitecap Inv. Corp. v. Putnam Lumber & Export Co.*, Civ. No.
2010-139 (CVG), at *25-25 (D.V.I. Mar. 21, 2013) (slip op.)
(internal citations to the record omitted). The Court thus
concluded that GSWP had transacted business within the meaning
of Section 4903(a).

    The present case concerns the same party--GSWP--and the
same underlying transactions. The Court thus sees no reason to
deviate from its decision in the Paradise Lumber Case.
Accordingly, the Court finds that the Virgin Islands Long-Arm
Statute would apply to GSWP.

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 18

## C. **Due Process**

Even if the Virgin Islands Long-Arm Statute applies, the
Court must inquire as to whether Due Process would preclude this
Court from exercising personal jurisdiction over GSWP.

In order for the assertion of personal jurisdiction to
comport with Due Process, as a threshold matter, the defendant
must have taken "action . . . purposefully directed toward the
forum State." *Pinker*, 292 F.3d at 370 (quoting *Asahi Metal
Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987)). "A
court may exercise general jurisdiction over a defendant where
he or she has 'continuous and systematic' contacts with the
forum, whether or not those contacts are related to the
plaintiff's cause of action." *Metcalfe*, 566 F.3d at 334. "If the
defendant maintain[s] continuous and substantial forum
affiliations," then general jurisdiction exists." *O'Connor*, 496
F.3d at 321 (internal citation and quotation marks omitted.)

In *Metcalfe*, the defendant, Renaissance, "sold at least
four powerboats to a Virgin Islands rental company and
advertised on its website that its boats could be rented from
this local company . . . ." 566 F.3d at 335. Renaissance also
sold at least seven powerboats to other Virgin Islands
residents. Renaissance sold all its boats with a ten-year
warranty, thus "obligat[ing] itself to its customers in the

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 19

Virgin Islands for many years to come." The Third Circuit found that "Renaissance's sales and advertising demonstrate a pattern of contacts with the Virgin Islands and, when coupled with the ten-year warranty . . . tend to suggest ongoing business relationships between Renaissance and Virgin Islands residents." *Id*. Viewing these contacts cumulatively, the Third Circuit found that there was a sufficient basis for the exercise of general jurisdiction over Renaissance.

Here, for the better part of a decade, GSWP sold hundreds of thousands of dollars of lumber to Putnam Lumber. As discussed above, the evidence shows that GSWP continued to do this for at least a year after learning that Putnam Lumber was selling this lumber in the Virgin Islands. Moreover, on one occasion, GSWP sold lumber directly to MSI, a Virgin Islands corporation. *Stewart v. Whitecap Investment Corp.*, Civ. No. 2012-28 (CVG), 2013 WL 1163510, at *6 (D.V.I. March 21, 2013)(slip op.). Further, as in *Renaissance*, GSWP warranted that its lumber would be free from rot or other decay for some period of time, although whether or not this warranty was applicable in the Virgin Islands is disputed. *Id.*

Yet, as noted above, this case differs from *Renaissance* in one important respect: GSWP did not contract directly with anyone in the Virgin Islands. Instead, it contracted with Putnam

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 20

Lumber, which in turn had an ongoing relationship with Paradise

Lumber, in the Virgin Islands. The operative inquiry is thus

whether the exercise of personal jurisdiction is constitutional

where a defendant has only made contacts with the forum state

through a third party.

In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286

(1980), the Supreme Court addressed when a defendant could be

subjected to personal jurisdiction for merely placing a good in

the stream of commerce. In that case, the defendants sold an

automobile to the plaintiffs in New York. A year later, the

plaintiffs were involved in an accident in Oklahoma. They sought

to assert product-liability claims against the defendants in

Oklahoma state court. The Supreme Court found no purposeful

contact by the defendants with Oklahoma, and thus no basis for

exercising personal jurisdiction over them. However, the Supreme

Court was careful to note that "if the sale of a product or

manufacturer or distributor . . . is not simply an isolated

occurrence, but arises from the efforts of the [defendants] to

serve, directly or indirectly, the market for its

product . . . , it is not unreasonable to subject them to suit."

*Id.* at 297.

Precisely what is required to give rise to personal

jurisdiction under the so-called "stream-of-commerce" theory is

not entirely clear. In *Asahi Metal Industry Company, Ltd. v.
Superior Court of California*, 480 U.S. 102 (1987), the Supreme
Court offered two different formulations. Justice O'Connor,
writing for a plurality of four, concluded that placement of a
product in the stream of commerce must be accompanied by some
"[a]dditional conduct of the defendant [that] may indicate an
intent or purpose to serve the market in the forum State." *Id.*
at 112. Justice O'Connor provided the following examples of such
conduct: "designing the product for the market in the forum
State, advertising in the forum State, establishing channels for
providing regular advice to customers in the forum state, or
marketing the product through a distributor who has agreed to
serve as the sales agent in the forum State." *Id.*

Justice Brennan, writing for another plurality of four,
disagreed that a finding of such "additional conduct" was
necessary. Instead, he maintained that "[a]s long as a
participant in this process is aware that the final product is
being marketed in the forum state, the possibility of a lawsuit
there cannot come as a surprise." *Id.* at 117 (Brennan, J.,
concurring).

The Court of Appeals for the Third Circuit has not selected
either of the two tests articulated in *Asahi Metal* as the
preferred means of determining whether a defendant has made the

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 22

minimum contacts necessary to support the exercise of personal
jurisdiction. Instead, it encourages courts to consider both
tests and then render a decision "based on the facts in the
record." *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149
F.3d 197, 205 (3d Cir. 1998).

In *Pennzoil Products Co. v. Colelli & Associates, Inc.*, 149
F.3d 197 (3d Cir. 1998), the plaintiff, Pennzoil Products Co.
("Pennzoil") sued the defendants in the Western District of
Pennsylvania. The defendants were Ohio corporations with their
principal place of business in Ohio. The defendants produced
solvents used to clean oil wells. The defendants sold these
solvents to oil producers in Ohio. Approximately sixty percent
of the oil produced by the Ohio oil producers was in turn sold
and shipped to Pennsylvania refineries. One of these refineries
was owned by Pennzoil. Pennzoil claimed that the solvents sold
by the defendants to the Ohio oil producers had caused damage to
its Pennsylvania refinery.

To determine whether there was a basis for the exercise of
personal jurisdiction, the Third Circuit applied each of the two
tests from *Asahi Metal*. First, the court applied Justice
O'Connor's standard. It noted that in addition to putting their
chemicals in the stream of commerce, the defendants had sent
several samples to Pennzoil's laboratories in an effort to

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 23

resolve the issues the solvents were causing. The Court held
that this showed an intent to "design" a product for the
Pennsylvania refinery market. *Id.* at 206. The Court also noted
that a representative of the defendants had several telephone
conversations with lab personnel at Pennzoil's refinery to
discuss various ways to test the effects of the solvent. This,
the court held, constituted the creation of "channels for
providing regular advice to" Pennzoil's personnel in
Pennsylvania. *Id.* Lastly, the Court noted that the defendants
were motivated to engage in this additional conduct because they
were aware that Pennzoil operated one of the largest refineries
in Pennsylvania, which constituted sixty percent of the Ohio oil
producers' customer base. The Court thus found a sufficient
basis for the exercise of personal jurisdiction under Justice
O'Connor's test.

The Court next considered the test propounded by Justice
Brennan. The Court found abundant evidence that the defendants
"placed goods[,] i.e., solvents[,] in the stream of commerce and
benefited economically from the sale of the final product, i.e.,
crude oil, to refineries in the forum state." *Id.* at 207. The
Court thus concluded that, under Justice Brennan's test, there
were sufficient minimum contacts to warrant the exercise of
personal jurisdiction.

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 24

Presented with the same evidence in the Paradise Lumber

case, the Court drew the following conclusions:

> [T]he evidence is clear that GSWP placed
> goods in the stream of commerce--namely,
> lumber--and benefited economically from the
> sale of the lumber that ultimately was sent
> to the Virgin Islands. Moreover, it
> continued to do so after becoming aware, by
> 2008 at the latest, of the fact that this
> lumber was being sold in the Virgin Islands.
> There is also some evidence that this lumber
> was protected by a warranty, which would
> obligate GSWP to Virgin Islands residents
> for some time after the sales. (*See* Paradise
> Lumber's Ex. G.) Thus, under Justice
> Brennan's test, GSWP has made sufficient
> minimum contacts with the Virgin Islands to
> be subject to personal jurisdiction in this
> Court.
>
> What is less clear is whether GSWP has
> engaged in the type of "additional conduct"
> contemplated by Justice O'Connor's test.
> There is no evidence that GSWP "designed"
> any product specifically with the Virgin
> Islands market in mind, or that it
> advertised its products or services in the
> Virgin Islands. The evidence does show that,
> on at least one occasion, GSWP offered to
> provide advice to individuals in the Virgin
> Islands who were complaining about the
> quality of the lumber. This evidence tends
> to suggest that there was a channel through
> which GSWP offered to provide advice about
> its products to end-users in the Virgin
> Islands. It is not clear whether this
> channel was used more than once. However,
> the Court notes that GSWP was clearly
> offering some degree of ongoing assistance
> when its representative stated "we can help
> you out some with this issue. How many
> pieces is your customer talking about?"

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 25

Given that the evidence clearly establishes minimum contacts under Justice Brennan's test, and there is evidence of at least one instance of additional conduct directed at the Virgin Islands, the Court finds that GSWP had the minimum contacts with the Virgin Islands necessary for this Court to exercise personal jurisdiction over it.

"After making a determination with regard to minimum contacts, a court has the option of evaluating whether exercising jurisdiction comports with notions of fair play and substantial justice." *Pennzoil Prods.*, 149 F.3d at 205 (internal quotation marks omitted). The factors courts are to consider in this inquiry include: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 205-06. In *Pennzoil Products*, the Third Circuit noted in particular that there were "[n]o claims of exorbitant travel expenses, unavailability of evidence, drains on judicial resources or countervailing state interests . . . ." *Id.* at 208.

Likewise, in this case, GSWP has not made any claims that it would be unduly burdened by litigating in the Virgin Islands. The Virgin Islands would certainly have an interest in having these claims litigated here, as the injured parties are all Virgin Islands residents or corporations. Given that the alleged decay of the lumber occurred in the Virgin Islands, and damaged structures in the Virgin Islands, it would seem that this would also be the most convenient forum. As GSWP is not the only defendant in this action, dismissing GSWP

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 26

> from this case might force the parties in
> this case to proceed against GSWP in another
> forum while simultaneously litigating before
> this Court. This piecemeal litigation would
> assuredly be inefficient and a net drain on
> judicial resources. Lastly, GSWP has not
> adduced any "countervailing state interest,"
> *id.*, that might be compromised by proceeding
> with this litigation in this Court.
>
> The Court finds that the exercise of
> personal jurisdiction over GSWP would be in
> accord with "notions of fair play and
> substantial justice." *Id.* at 205.

*Whitecap Inv. Corp. v. Putnam Lumber & Export Co.*, Civ. No.
2010-139 (CVG), at *31-34 (D.V.I. Mar. 21, 2013) (slip op.)
(internal citations to the record omitted).

As noted above, the instant motion concerns the same party-
-GSWP--and the same underlying transactions. The Court thus sees
no reason to deviate from its reasoning in the Paradise Lumber
Case. Accordingly, the Court finds that the exercise of personal
jurisdiction over GSWP in the instant action comports with Due
Process.

An appropriate order follows.

                              S_____
                                 **Curtis V. Gómez**
                                 **District Judge**