```
                  DISTRICT COURT OF THE VIRGIN ISLANDS
                    DIVISION OF ST. THOMAS AND ST. JOHN

MRL Development I, LLC and MICHAEL R.  )
LUCHT,                                 )
                                       )
                Plaintiffs,            )
                                       )         Civil No. 2013-48
           v.                          )
                                       )
WHITECAP INVESTMENT CORP., d/b/a       )
PARADISE LUMBER; PUTNAM LUMBER &       )
EXPORT CO.; PUTNAM FAMILY PROPERTIES,  )
INC.; and GREAT SOUTHERN WOOD          )
PRESERVING, INC.,                      )
                                       )
                Defendants.            )
_____
WHITECAP INVESTMENT CORP., d/b/a       )
PARADISE LUMBER,                       )
                                       )
                Cross-claimant,        )
                                       )
           v.                          )
                                       )
PUTNAM LUMBER & EXPORT CO.; PUTNAM     )
FAMILY PROPERTIES, INC.; and GREAT     )
SOUTHERN WOOD PRESERVING, INC.,        )
                                       )
                Cross-claim defendant. )
_____)
                                       )
PUTNAM FAMILY PROPERTIES, INC.,        )
                                       )
                Cross-claimant,        )
                                       )
           v.                          )
                                       )
WHITECAP INVESTMENT CORP., d/b/a       )
PARADISE LUMBER; and GREAT SOUTHERN    )
WOOD PRESERVING, INC.,                 )
                                       )
                Cross-claim defendants.)
```

|  | ) |
|---|---|
| **PUTNAM LUMBER & EXPORT COMPANY,** | ) |
|  | ) |
| Cross-claimant, | ) |
|  | ) |
| v. | ) |
|  | ) |
| **WHITECAP INVESTMENT CORP., d/b/a** | ) |
| **PARADISE LUMBER; and GREAT SOUTHERN** | ) |
| **WOOD PRESERVING, INC.,** | ) |
|  | ) |
| Cross-claim defendant. | ) |
|  | ) |

**ATTORNEYS:**

**David A. Bornn, Esq.**
The Bornn Firm, PLLC
St. Thomas, VI
**Paul Martin Platte, Esq.**
Columbia, SC
   *For the Plaintiffs* ,

**Chad C. Messier, Esq.**
**Alex Moskowitz, Esq.**
Dudley, Topper & Feuerzeig
St. Thomas, VI
   *For the defendant/cross-claimant Whitecap Investment Corp.*
   *d/b/a Paradise Lumber,*

**Lisa M. Komives, Esq.**
Bolt Nagi PC
St. Thomas, VI
**Robert A. Carlson, Esq.**
Lee, Hernandez, Landrum, Garofalo and Blake APC
Miami, FL
   *For the defendants/cross-claimaints Putnam Lumber & Export*
   *Co. and Putnam Family Properties, Inc,*

**Daryl C. Barnes, Esq.**
Bryant, Barnes, Moss & Beckstedt
St. Croix, VI
**Stewart Andrew Kelly, Esq.**
Lightfoot, Franklin & White, LLC
Birmingham, AL
   *For the defendant/cross-claim defendant Great Southern Wood Preserving, Inc.*

## ORDER

**GÓMEZ, J.**

Before the Court is the renewed motion of the defendant/cross-claim defendant Great Southern Wood Preserving, Inc. to dismiss all claims and cross-claims asserted against it for want of personal jurisdiction.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Great Southern Wood Preserving, Inc ("GSWP") is a lumber wholesaler. It operates principally in Alabama. In addition to selling wood directly, it also provides chemical and pressure treatments to prevent lumber from decaying. The ostensible purpose of such treatments is to render the lumber safe for use in buildings.

From in or about 2003 until in or about 2009, GSWP regularly sold treated lumber and provided lumber-treatment services to the defendant/cross-claimant Putnam Family

Properties, Inc., doing business as Putnam Lumber and Export Company ("Putnam Lumber"). Putnam Lumber, a Florida corporation, is itself a lumber retailer. Putnam Lumber regularly sold lumber to, among others, the defendant/cross-claimant Whitecap Investment Corporation, doing business as Paradise Lumber ("Paradise Lumber").

Paradise Lumber is a lumber retailer operating in St. John, United States Virgin Islands. It sold lumber that it had purchased from Putnam Lumber, and which had been treated by GSWP, to various consumers in St. John. These consumers used the lumber in their sundry buildings. Two of these consumers are the plaintiffs in the instant case, MRL Development I, LLC and Michael R. Lucht (collectively "MRL").

MRL claims that the GSWP-treated lumber prematurely decayed, causing damage to its house, into which the lumber had been incorporated.

After receiving complaints from consumers like MRL about the GSWP-treated lumber, on December 29, 2010, Paradise Lumber initiated an action against, among others, GSWP in this court. That action is captioned *Whitecap Investment Corp. v. Putnam Lumber & Export Co.*, Civ. No. 2010-139 (the "Paradise Lumber Case").

MRL initiated this matter on February 15, 2013, in the Superior Court of the Virgin Islands. The amended complaint named GSWP, Paradise Lumber, and Putnam Lumber as defendants. Thereafter, on April 15, 2013, Paradise Lumber filed its answer and cross-claims against GSWP and Putnam Lumber.

On May 14, 2013, GSWP removed the action to this Court. That same day, GSWP moved to dismiss both the complaint and Paradise Lumber's cross-claims on the grounds that this Court lacked personal jurisdiction over GSWP.

On June 21, 2013, Putnam Lumber filed cross-claims against the other defendants, including GSWP. Thereafter, on July 22, 2013, GSWP moved to dismiss Putnam Lumber's cross-claims as well.

The Court denied GSWP's motions to dismiss for lack of personal jurisdiction in a memorandum opinion and order on January 14, 2014. In the January 14, 2014, memorandum opinion, the Court found that GSWP had sold wood to Putnam Lumber with the knowledge that such wood would be sold to consumers in the Virgin Islands. (ECF No. 106.) The Court also found that GSWP had provided a channel through which to provide service to end-users in the Virgin Islands. (*Id.*) These contacts, the Court held, were sufficient for this Court to exercise personal jurisdiction over GSWP. (*Id.*)

GSWP filed another motion to dismiss for lack of personal jurisdiction on May 22, 2014. In its May 22, 2014, motion, GSWP argues that the finding that personal jurisdiction is proper in this case is undermined by the recently decided case of *Walden v. Fiore*, 134 S. Ct. 1115 (2014).

## II.  DISCUSSION

### A.  Reconsideration

Local Rule of Civil Procedure 7.3 permits motions for reconsideration only where there is:

1. intervening change in controlling law;

2. availability of new evidence;

3. the need to correct clear error or prevent manifest injustice.

LRCi 7.3. Such motion "shall be filed within fourteen (14) days after entry of the order or decision unless the time is extended by the Court." LRCi 7.3.

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985). "Such motions are not substitutes for appeals, and are not to be used 'as a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have

been raised before but were not.'" *Cabrita Point Dev., Inc. v. Evans*, 52 V.I. 968, 975 (D.V.I. 2009) (quoting *Bostic v. AT & T of the V.I.*, 312 F. Supp. 2d 731, 733 (D.V.I. 2004)).

In the context of a motion to reconsider, "manifest injustice 'generally means that the Court overlooked some dispositive factual or legal matter that was presented to it.'" *Id.* (quoting *In re Rose*, No. 06-1818(JLP), 2007 U.S. Dist. LEXIS 64622, at *3 (D.N.J. Aug. 30, 2007)). Manifest injustice has also been defined as "'an error in the trial court that is direct, obvious, and observable.'" *Tenn. Prot. & Advocacy, Inc. v. Wells*, 371 F.2d 342, 348 (6th Cir. 2004) (quoting BLACK'S LAW DICTIONARY 974 (7th ed. 1999)). "[M]ost cases ... use the term 'manifest injustice' to describe the result of plain error." *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1425 (5th Cir. 1996).

B.  **Due Process**

In considering personal jurisdiction questions, a court must ask whether, under the Due Process Clause of the United States Constitution, the defendant has "certain minimum contacts with . . . [the forum state or territory] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Due Process Clause recognizes two types of personal jurisdiction: general and specific. *See O'Connor*, 496 F.3d at 317 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 & n.9 (1984)). "A court may exercise general jurisdiction over a defendant where he or she has 'continuous and systematic' contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action." *Metcalfe*, 566 F.3d at 334 (citing *Helicopteros Nacionales de Colombia*, 466 U.S. at 416; *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000)). "Specific jurisdiction exists if the defendant has ' "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.' " *Metcalfe*, 566 F.3d at 334 (quoting *Burger King Corp.*, 471 U.S. 462, 472 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia*, 466 U.S. at 414)). " 'If the defendant "maintain[s] continuous and substantial forum affiliations," then general jurisdiction exists. If the defendant's contacts fall short of that standard, then at least one contact must give rise or relate to the plaintiff's claim.' " *Metcalfe*, 566 F.3d at 334 (quoting *O'Connor*, 496 F.3d at 321 (quoting *Dollar Sav. Bank v. First Sec. Bank of Utah*, 746

F.2d 208, 212 (3d Cir. 1984)) (citing *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)) (alteration original)).

### III. ANALYSIS

**A.    Reconsideration**

In order to be timely, a motion for reconsideration of an interlocutory order must be filed within fourteen days of the entry of said order. *See* LRCi 7.3. The order that GSWP asks this Court to reconsider was issued on January 14, 2014. GSWP filed the instant motion on May 22, 2014. Therefore, to the extent that GSWP challenges anything other than the due process analysis in the January 14, 2014, Order, GSWP's motion for reconsideration is certainly out of time.

**B.    Due Process**

GSWP argues that the Court's January 14, 2014, memorandum opinion is incompatible with the recently decided case of *Walden v. Fiore*, 134 S. Ct. 1115 (2014).

The respondents in *Walden*, who had a residence in Nevada, were gambling in Puerto Rico. *Walden v. Fiore*, 134 S. Ct. 1115, 1118-20 (2014). On their return to the United States,

> [a] law enforcement official at the San Juan airport notified [a DEA task force] in Atlanta that respondents had boarded a plane for Atlanta, where they planned to catch a connecting flight to Las Vegas, Nevada.

> When respondents arrived in Atlanta, petitioner[, a deputized agent of the DEA,] and another DEA agent approached them at the departure gate for their flight to Las Vegas . . . After using a drug-sniffing dog to perform a sniff test, petitioner seized the cash [the respondents were carrying] . . .
>
> The next day, petitioner received a phone call from respondents' attorney in Nevada seeking return of the funds. On two occasions over the next month, petitioner also received documentation from the attorney regarding the legitimacy of the funds.
>
> At some point after petitioner seized the cash, he helped draft an [allegedly false and misleading] affidavit to show probable cause for forfeiture of the funds and forwarded that affidavit to a United States Attorney's Office in Georgia . . . In the end, no forfeiture complaint was filed, and the DEA returned the funds to respondents in March 2007.
>
> Respondents filed suit against petitioner in the United States District Court for the District of Nevada, seeking money damages under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

*Id.* (internal citation omitted). The petitioner argued that the district court lacked personal jurisdiction. *Id.* at 1120.

The Supreme Court of the United States held that personal jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation. *Id*. at 1121. The Supreme Court stated that: "First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id*. at 1122 (emphasis in

original)(internal quotation omitted). Second, the *Walden* Court said, the "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. Contacts with the state itself may include deliberately exploiting a market in the forum state. *See id*. Although a defendant outside the forum state may have harmed a plaintiff who has ties to the forum state, more is required to establish the requisite contacts between the defendant and the forum state. *Id*.

Thus, in *Walden*, where the defendant merely interacted with individuals with ties to Nevada, while those individuals were in Atlanta, Georgia, the Supreme Court found that the requisite contacts between the defendant and the forum were not present. *See generally id.* Accordingly, there was no personal jurisdiction. *See id.*

GSWP relies on *Walden* for the extremely broad proposition that a defendant must deal directly with the forum state in order for personal jurisdiction to be proper. This reliance is misplaced. This broad proposition cannot be found in the text of *Walden*, or any other case addressing personal jurisdiction handed down by the Supreme Court. Instead, *Walden* stands for the proposition that a defendant's contact with a resident of the forum state, outside of the forum state, is insufficient to

Case: 3:13-cv-00048-CVG-RM   Document #: 358   Filed: 10/26/14   Page 12 of 17

MRL Dev. I, Inc. v. Whitecap Inv. Corp.
Civil No. 2013-48
Order
Page 12

establish minimum contacts with the forum state. *See Walden*, 134 S. Ct. at 1122. The defendant must have some contact with the forum state itself. *See id*.

*Walden* did not purport to, and in fact does not, do anything to alter the Supreme Court's line of cases addressing corporations that put products into the stream of commerce. Instead, in dicta, the Supreme Court acknowledged that minimum contacts were created where a defendant exploited a market of the forum state. *Walden*, 134 S. Ct. at 1122. As this Court previously stated in this case

> Precisely what is required to give rise to personal jurisdiction under the so-called "stream-of-commerce" theory is not entirely clear. In *Asahi Metal Industry Company, Ltd. v. Superior Court of California*, 480 U.S. 102 (1987), the Supreme Court offered two different formulations. Justice O'Connor, writing for a plurality of four, concluded that placement of a product in the stream of commerce must be accompanied by some "[a]dditional conduct of the defendant [that] may indicate an intent or purpose to serve the market in the forum State." *Id*. at 112. Justice O'Connor provided the following examples of such conduct: "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id*.
>
> Justice Brennan, writing for another plurality of four, disagreed that a finding of such "additional conduct" was necessary. Instead, he maintained that "[a]s long as a participant in

this process is aware that the final product is being marketed in the forum state, the possibility of a lawsuit there cannot come as a surprise." *Id.* at 117 (Brennan, J., concurring).

The Court of Appeals for the Third Circuit has not selected either of the two tests articulated in *Asahi Metal* as the preferred means of determining whether a defendant has made the minimum contacts necessary to support the exercise of personal jurisdiction. Instead, it encourages courts to consider both tests and then render a decision "based on the facts in the record." *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 205 (3d Cir. 1998).

In *Pennzoil Products Co. v. Colelli & Associates, Inc.*, 149 F.3d 197 (3d Cir. 1998), the plaintiff, Pennzoil Products Co. ("Pennzoil") sued the defendants in the Western District of Pennsylvania. The defendants were Ohio corporations with their principal place of business in Ohio. The defendants produced solvents used to clean oil wells. The defendants sold these solvents to oil producers in Ohio. Approximately sixty percent of the oil produced by the Ohio oil producers was in turn sold and shipped to Pennsylvania refineries. One of these refineries was owned by Pennzoil. Pennzoil claimed that the solvents sold by the defendants to the Ohio oil producers had caused damage to its Pennsylvania refinery.

To determine whether there was a basis for the exercise of personal jurisdiction, the Third Circuit applied each of the two tests from *Asahi Metal*. First, the court applied Justice O'Connor's standard. It noted that in addition to putting their chemicals in the stream of commerce, the defendants had sent several samples to Pennzoil's laboratories in an effort to resolve the issues the solvents were causing. The Court held that this showed an intent to "design" a product for the Pennsylvania refinery market. *Id.* at 206. The Court also noted that a representative of the defendants had several

telephone conversations with lab personnel at Pennzoil's refinery to discuss various ways to test the effects of the solvent. This, the court held, constituted the creation of "channels for providing regular advice to" Pennzoil's personnel in Pennsylvania. *Id.* Lastly, the Court noted that the defendants were motivated to engage in this additional conduct because they were aware that Pennzoil operated one of the largest refineries in Pennsylvania, which constituted sixty percent of the Ohio oil producers' customer base. The Court thus found a sufficient basis for the exercise of personal jurisdiction under Justice O'Connor's test.

The Court next considered the test propounded by Justice Brennan. The Court found abundant evidence that the defendants "placed goods[,] i.e., solvents[,] in the stream of commerce and benefited economically from the sale of the final product, i.e., crude oil, to refineries in the forum state." *Id.* at 207. The Court thus concluded that, under Justice Brennan's test, there were sufficient minimum contacts to warrant the exercise of personal jurisdiction.

Presented with the same evidence in the Paradise Lumber case, the Court drew the following conclusions:

> [T]he evidence is clear that GSWP placed goods in the stream of commerce--namely, lumber--and benefited economically from the sale of the lumber that ultimately was sent to the Virgin Islands. Moreover, it continued to do so after becoming aware, by 2008 at the latest, of the fact that this lumber was being sold in the Virgin Islands. There is also some evidence that this lumber was protected by a warranty, which would obligate GSWP to Virgin Islands residents for some time after the sales. (*See* Paradise Lumber's Ex. G.) Thus, under Justice Brennan's test, GSWP has made sufficient minimum contacts with the Virgin Islands to

be subject to personal jurisdiction in this Court.

What is less clear is whether GSWP has engaged in the type of "additional conduct" contemplated by Justice O'Connor's test. There is no evidence that GSWP "designed" any product specifically with the Virgin Islands market in mind, or that it advertised its products or services in the Virgin Islands. The evidence does show that, on at least one occasion, GSWP offered to provide advice to individuals in the Virgin Islands who were complaining about the quality of the lumber. This evidence tends to suggest that there was a channel through which GSWP offered to provide advice about its products to end-users in the Virgin Islands. It is not clear whether this channel was used more than once. However, the Court notes that GSWP was clearly offering some degree of ongoing assistance when its representative stated "we can help you out some with this issue. How many pieces is your customer talking about?"

Given that the evidence clearly establishes minimum contacts under Justice Brennan's test, and there is evidence of at least one instance of additional conduct directed at the Virgin Islands, the Court finds that GSWP had the minimum contacts with the Virgin Islands necessary for this Court to exercise personal jurisdiction over it.

"After making a determination with regard to minimum contacts, a court has the option of evaluating whether exercising jurisdiction comports with notions of fair play and substantial justice." *Pennzoil Prods.*, 149 F.3d at 205 (internal quotation marks omitted). The factors courts are to consider in this inquiry include: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and

>effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 205-06. In *Pennzoil Products*, the Third Circuit noted in particular that there were "[n]o claims of exorbitant travel expenses, unavailability of evidence, drains on judicial resources or countervailing state interests . . . ." *Id.* at 208.
>
>Likewise, in this case, GSWP has not made any claims that it would be unduly burdened by litigating in the Virgin Islands. The Virgin Islands would certainly have an interest in having these claims litigated here, as the injured parties are all Virgin Islands residents or corporations. Given that the alleged decay of the lumber occurred in the Virgin Islands, and damaged structures in the Virgin Islands, it would seem that this would also be the most convenient forum. As GSWP is not the only defendant in this action, dismissing GSWP from this case might force the parties in this case to proceed against GSWP in another forum while simultaneously litigating before this Court. This piecemeal litigation would assuredly be inefficient and a net drain on judicial resources. Lastly, GSWP has not adduced any "countervailing state interest," *id.*, that might be compromised by proceeding with this litigation in this Court.
>
>The Court finds that the exercise of personal jurisdiction over GSWP would be in accord with "notions of fair play and substantial justice." *Id.* at 205.

(ECF No. 106.)

As *Walden* has not done anything, or purported to do anything, which changes this analysis, the Court sees no reason to alter its opinion on the matter.

The premises considered, it is hereby

**ORDERED** that GWSP's motion to dismiss for lack of personal jurisdiction is **DENIED**.

                                       S\_____
                                          **Curtis V. Gómez**
                                          **District Judge**

Case: 3:13-cv-00048-CVG-RM   Document #: 358   Filed: 10/26/14   Page 17 of 17

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Order
Page 17