DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

MRL Development I, LLC and MICHAEL R.  )
LUCHT,                                )
                                      )
            Plaintiffs,               )
                                      )          Civil No. 2013-48
            v.                        )
                                      )
WHITECAP INVESTMENT CORP., d/b/a      )
PARADISE LUMBER; PUTNAM LUMBER &      )
EXPORT CO.; PUTNAM FAMILY PROPERTIES, )
INC.; and GREAT SOUTHERN WOOD         )
PRESERVING, INC.,                     )
                                      )
            Defendants.               )
_____ )
WHITECAP INVESTMENT CORP., d/b/a      )
PARADISE LUMBER,                      )
                                      )
            Cross-claimant,           )
                                      )
            v.                        )
                                      )
PUTNAM LUMBER & EXPORT CO.; PUTNAM    )
FAMILY PROPERTIES, INC.; and GREAT    )
SOUTHERN WOOD PRESERVING, INC.,       )
                                      )
            Cross-claim defendant.    )
_____ )
PUTNAM FAMILY PROPERTIES, INC.,       )
                                      )
            Cross-claimant,           )
                                      )
            v.                        )
                                      )
WHITECAP INVESTMENT CORP., d/b/a      )
PARADISE LUMBER; and GREAT SOUTHERN   )
WOOD PRESERVING, INC.,                )
                                      )
            Cross-claim defendants.   )
_____ )

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 2

|  |  |
|---|---|
| **PUTNAM LUMBER & EXPORT COMPANY,** | ) |
|  | ) |
| **Cross-claimant,** | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **WHITECAP INVESTMENT CORP., d/b/a** | ) |
| **PARADISE LUMBER; and GREAT SOUTHERN** | ) |
| **WOOD PRESERVING, INC.,** | ) |
|  | ) |
| **Cross-claim defendant.** | ) |
|  | ) |

**ATTORNEYS:**

**David A. Bornn, Esq.**
The Bornn Firm, PLLC
St. Thomas, VI
**Paul Martin Platte, Esq.**
Columbia, SC
    *For the Plaintiffs* ,

**Chad C. Messier, Esq.**
**Alex Moskowitz, Esq.**
Dudley, Topper & Feuerzeig
St. Thomas, VI
    *For the defendant/cross-claimant Whitecap Investment Corp.*
    *d/b/a Paradise Lumber,*

**Lisa M. Komives, Esq.**
Bolt Nagi PC
St. Thomas, VI
**Robert A. Carlson, Esq.**
Lee, Hernandez, Landrum, Garofalo and Blake APC
Miami, FL
    *For the defendants/cross-claimaints Putnam Lumber & Export*
    *Co. and Putnam Family Properties, Inc,*

**Daryl C. Barnes, Esq.**
Bryant, Barnes, Moss & Beckstedt
St. Croix, VI

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 3

**Stewart Andrew Kelly, Esq.**
Lightfoot, Franklin & White, LLC
Birmingham, AL
> *For the defendant/cross-claim defendant Great Southern Wood
> Preserving, Inc.*

<u>**MEMORANDUM OPINION**</u>

**GÓMEZ, J.**

Before the Court are the several motions of the
defendants/cross-claim defendants in this matter for total or
partial summary judgment.

## I.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Great Southern Wood Preserving, Inc. ("GSWP") is an Alabama
lumber wholesaler. In addition to selling wood, it also provides
chemical and pressure treatments to prevent lumber from
decaying. The ostensible purpose of such treatments is to render
the lumber safe for use in buildings.

From in or about 2003 until in or about 2009, GSWP
regularly sold treated lumber and provided lumber-treatment
services to the defendant/cross-claimant Putnam Family
Properties, then doing business as Putnam Lumber and Export
Company ("Putnam Family"). Putnam Family later sold its wood
export business and name to defendant/cross-claimant Putnam
Lumber and Export Co. ("Putnam Lumber")(Putnam Family and Putnam
Lumber are collectively referred to herein as the "Putnam
Defendants"). Putnam Family, a Florida corporation, was itself a

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 4

lumber retailer. Putnam Family regularly sold lumber to, among others, the defendant/cross-claimant Whitecap Investment Corporation, doing business as Paradise Lumber ("Paradise Lumber").

Paradise Lumber is a lumber retailer operating in St. John, United States Virgin Islands. It sold lumber that it had purchased from Putnam Family, and which had been treated by GSWP, to various consumers in St. John. These consumers used the lumber in their sundry buildings. Two of these consumers are the plaintiffs in the instant case, MRL Development I, LLC ("MRL Dev.") and Michael R. Lucht ("Lucht") (collectively "MRL").

MRL claims that the GSWP-treated lumber, sold by the Putnam Defendants, prematurely decayed, causing damage to its house, into which the lumber had been incorporated.

MRL initiated this matter on February 15, 2013, in the Superior Court of the Virgin Islands. The amended complaint (the "Complaint") named GSWP, Paradise Lumber, and the Putnam Defendants as defendants. The Complaint included six counts: (1) breach of contract against Paradise Lumber; (2) breach of contract against the Putnam Defendants; (3) breach of warranty against all defendants; (4) negligence against all defendants; (5) strict liability against all defendants; and (6) deceptive trade practices against all defendants.

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 5

Thereafter, on April 15, 2013, Paradise Lumber filed its answer to MRL's complaint. Paradise Lumber also filed cross-claims against GSWP and the Putnam Defendants.  Paradise Lumber's cross-claims seek indemnity and contribution from GSWP and the Putnam Defendants.

On May 14, 2013, GSWP removed the action to this Court. Following discovery, and approximately one month before trial, the defendants filed several motions for total or partial summary judgment. On August 29, 2014, GSWP filed a motion for summary judgment on the cross-claims brought against it by Paradise Lumber. Thereafter, on September 2, 2014, Paradise Lumber moved for partial summary judgment against MRL.  Paradise Lumber seeks judgment in its favor as to Count Six, deceptive trade practices.  Also, on September 2, 2014, the Putnam Defendants filed a motion seeking judgment on all claims alleged against them in MRL's Complaint.  Paradise Lumber joined that motion.  Finally, also on September 2, 2014, GSWP filed a motion for summary judgment as to all claims alleged against it in MRL's Complaint.  Paradise Lumber joined GSWP's motion in total, and the Putnam Defendants joined it in part. MRL opposes all of the summary judgment motions. Each of the motions for summary judgment shall be addressed herein.

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 6

## II. <u>DISCUSSION</u>

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd.*

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 7

*of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster*

*v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

### III. <u>ANALYSIS</u>

#### A. **Claims Alleged in the Complaint**

GSWP seeks judgment in its favor as to all claims alleged

against it in MRL's Complaint.  GSWP argues that MRL's claims

are time-barred by the statute of limitations. Both the Putnam

Defendants and Paradise Lumber join GSWP's argument on that

issue.

Federal courts sitting in diversity apply the statute of

limitations of the Court's forum state. *See Lafferty v. St.*

*Riel*, 495 F.3d 72, 76 (3d Cir. 2007).  The Virgin Islands Code

provides, in pertinent part:

> Civil actions shall only be commenced within the
> periods prescribed below after the cause of
> action shall have accrued, except when, in
> special cases, a different limitation is
> prescribed by statute:
>
> * * *
>
> (3) Six years --
>
> (A) An action upon a contract or
> liability, express or implied, excepting those
> mentioned in paragraph (1)(C) of this section.
>
> (B) An action upon a liability
> created by statute, other than a penalty or
> forfeiture.
>
> (C) An action for waste or trespass
> upon real property.

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 8

        (D)   An   action   for   taking,
detaining,   or   injuring   personal   property,
including   an   action   for   the   specific   recovery
thereof.

* * *

(5) Two years--

        (A) An action for libel, slander,
assault, battery, seduction, false imprisonment,
or for any injury to the person or rights of
another not arising on contract and not herein
especially enumerated, or to set aside a sale of
real property for non-payment of real property
taxes   pursuant   to   Title   33,   chapter   89,
subchapter III of this Code.

V.I. Code Ann. tit. 5, § 31.

MRL has asserted at least two different categories of
claims, those based in contract and those based in tort. Each of
these claims carries its own statute of limitations.  As such,
each category of claim will be considered separately.

**1. Counts One through Three: Breach of Contract and Breach of
   Warranty**

There are two different types of contract claims, those
based in the general common law of contracts and those based on
the Uniform Commercial Code, which governs contracts for the
sale of goods. A warranty is an express or implied agreement,
promising that something in furtherance of the underlying
contract is guaranteed by one of the contracting parties.
*Warranty*, Black's Law Dictionary (9th ed. 2009). Warranty

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 9

claims, like contract claims, fall into two categories: common
law warranty claims, where the underlying contract is not
subject to the UCC, *see, e.g.*, *Paramount Aviation Corp. v.
Agusta*, 288 F.3d 67, 73 (3d Cir. 2002)(applying the New Jersey
common law of warranties to a service contract); and UCC
warranty claims, where the underlying contract is for the sale
of goods, *see* V.I. CODE ANN. tit. 11A, §§ 2-313, 2-314, 2-315.

A common law contract or warranty claim is subject to a six
year statute of limitations. *See* V.I. CODE ANN. tit. 5, § 31.  In
such contract cases, the cause of action accrues when there is
an existing right to sue based on breach of contract. *Cooper v.
Sirota*, 37 F. App'x 46, 48 (3d Cir. 2002); *see also White v. S&E
Bakery*, Inc., 26 V.I. 87, 90 (Terr. Ct. 1991). That is, a claim
accrues at the time that an injured party should be reasonably
aware that another party to the contract failed to perform. *See
Cooper*, 37 F. App'x at 48.

Because a claim accrues at the time the injured party
should reasonably be aware of the injury, the time before the
injury is discovered may toll the running of the statute of
limitations. *See id*. That tolling is generally the result of
what is referred to as the "discovery rule." "The discovery rule
is an exception to the requirement that a plaintiff bring suit
within the applicable statute of limitations. The discovery rule

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 10

provides that when the existence of an injury is not known to a plaintiff and the knowledge cannot reasonably be ascertained within the statute of limitations, the statute tolls until the injury reasonably could have been discovered." *Id*. at 49 (internal citation omitted). The discovery rule can toll the statute of limitations for common law contracts, where the injured party is unable to learn of the contractual injury despite the exercise of due diligence. *Id.*

By contrast, a contract or warranty claim under the Uniform Commercial Code (the "UCC"), "must be commenced within four years after the cause of action has accrued." *See* V.I. CODE ANN. tit. 11A, § 2-725. A claim for breach of a UCC contract accrues when the breach occurs, "regardless of the aggrieved party's lack of knowledge of the breach." *Id.* Similarly, under the UCC, "[a] breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." *Id.*

Clearly, given the different limitation periods and rules that apply, the determination of whether a contract or warranty claim falls within the UCC is significant.

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 11

To make that determination, the Court must assess the basic purpose of the contract. "Where the sale of goods is incidental to the basic purpose of a contract, the general statute of limitations on contracts will apply rather than the UCC statute of limitations." *Tele-Radio Sys. Ltd. v. De Forest Electronics, Inc.*, 92 F.R.D. 371, 374 (D.N.J. 1981); *see also Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 742 (2d Cir. 1979). The corollary rule is that where the basic purpose of a contract is for the sale of goods, the UCC's statute of limitations will apply. *See Triangle Underwriters*, 604 F.2d at 743 (affirming district court's application of the UCC statute of limitations rather than the general contract statute of limitations); *White*, 26 V.I. at 90 ("Because the purchase of the pear nectar by Plaintiff constituted a contract for the sale of goods within the meaning of the UCC section 2-106, Count III is governed by Title 11A V.I.C. Article 2.")(internal quotations omitted). It is well established in caselaw that a contract for the sale or purchase of a tangible object falls within the purview of the UCC. *See, e.g., Std. Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 450 (3d Cir. 2003)(applying the UCC to the sale of a glass fabricating machine); *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 287 (3d Cir.

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 12

1993)(applying the UCC to the sale of ethylene); *White*, 26 V.I.
at 90 (applying the UCC to the sale of pear nectar).

**a. Counts One and Two: Breach of Contract**

Count One alleges a breach of contract claim against
Paradise Lumber. Count Two alleges a breach of contract claim
against the Putnam Defendants. Paradise Lumber and the Putnam
Defendants have moved for summary judgment on these claims.  In
part, they rely on evidence and legal arguments presented by
GSWP in its motion for summary judgment claims asserted against
it.[1]

In support of the argument that the statute of limitations
has run on contract based claims, GSWP directs the Court to a
deposition of Michael Lucht, one of the plaintiffs in this case.
In Lucht's deposition, he states that he (through contractors)
purchased what Lucht believed was pressure treated lumber from
Paradise Lumber from July, 2004, through December, 2006. (Lucht
Dep. 28:14-16, 33:22-34:4.) This lumber was used to construct a
deck and an addition to MRL's property on St. John. (*Id.* 37:14-
38:15.)  The construction occurred from July, 2004, through
December, 2006. (*Id*. 28:14-16, 33:22-34:4.) Lucht also stated in
his deposition that the pressure treated lumber began to fail in

---

[1] There is no breach of contract claim asserted by MRL as against GSWP, but
there is a breach of warranty claim against GSWP which sounds in contract.

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 13

2010. (*Id*. 64:18-21.) Lucht states that as a result of the
rotting wood, he began replacing boards in 2010. (*Id*.) GSWP also
relies on the deposition testimony of Brian Rourke ("Rourke"),
president of Paradise Lumber. Rourke asserts that Paradise
Lumber purchased the lumber at issue from the Putnam Defendants.
(Rourke Dep. 118:17-21.)  Rourke also testified that no express
warranties were given to customers of Paradise Lumber. (*Id*.
52:6-21.)

The testimony of Lucht and Rourke provides useful
information in assessing the basic purpose of the contracts. Any
such assessment would be incomplete, however, without applying
that factual background to the legal framework against which it
must be measured.

The Virgin Islands has adopted the UCC to govern the sales
of goods. See V.I. CODE ANN. tit. 11A, § 1-101, et seq. (2012).
The UCC "applies to transactions in goods". See V.I. CODE ANN.
tit. 11A, §§ 2-102 (2012). "Goods" are "all things (including
specially manufactured goods) which are movable at the time of
identification to the contract for sale ... investment
securities ... and things in action." V.I. CODE ANN. tit. 11A, §
2-105 (1).

The contracts at issue in Counts One and Two were oral
contracts, memorialized by invoices, for the sale and purchase

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 14

of lumber (the "lumber contracts"). Lucht testified that he bought lumber from Paradise Lumber, which third-party contractors brought to his property on St. John. (Lucht Dep. 28:14-16, 33:22-34:4, 53:5-12.) That lumber was used to build his deck and addition. (*Id.*) Rourke testified that Paradise Lumber purchased wood from the Putnam Defendants which was delivered to Paradise Lumber, who then resold it. (Rourke Dep. 32:15-33:18, 118:17-21.)

The Court has already had cause to consider whether contracts for the sale of lumber between and among the defendants in this case were for goods or services. *See Whitecap Inv. Corp. v. Putnam Lumber & Exp. Co.*, 58 V.I. 635, 2013 WL 2365406, *4 (D.V.I. May 30, 2013)(the "Paradise Lumber Case"). In the Paradise Lumber Case the Court noted, without deciding, that if the contracts involved were for the sale of lumber, the UCC may apply. *Id.* Wood is the type of good that is "movable at the time of identification to the contract for sale[.]" V.I. CODE ANN. tit. 11A, § 2-105 (1). It is well established in caselaw that a contract for the sale or purchase of a tangible object is a contract for the sale of goods, and falls within the purview of the UCC. *See, e.g.*, *Std. Bent Glass Corp.*, 333 F.3d at 450 (applying the UCC to the sale of a glass fabricating machine); *Olefins Trading*, 9 F.3d at 287 (applying the UCC to the sale of

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 15

ethylene); *White*, 26 V.I. at 90 (applying the UCC to the sale of
pear nectar).

The lumber contracts are contracts for the sale and
purchase of tangible, movable objects. As contracts for goods,
the lumber contracts fall within the purview of the UCC. Where,
as here, a contract falls within the UCC, a breach thereof and
associated warranties are subject to a four-year statute of
limitations. *See* V.I. CODE ANN. tit. 11A, § 2-725(2)("Subsection
2"). A claim for breach of these contracts accrued when the
breach occurred, regardless of MRL's knowledge of the breach.
*See id.*

MRL contends that the lumber contracts were breached
because the pressure treated lumber was not treated to certain
specifications.  The lumber at issue in the lumber contracts was
purchased no later than December, 2006, per Lucht's deposition
testimony.  Treatment of the lumber would have happened prior to
that date. Breach of the lumber contracts would thus have
occurred no later than December, 2006. As the contract claims
began accruing no later than December, 2006, the statute of
limitations ran in December, 2010.  MRL did not file its
complaint in this matter until February, 2013.

GSWP, the Putnam Defendants, and Paradise Lumber have, as
discussed above, put forth competent evidence demonstrating

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 16

facts which, if uncontroverted, entitle them to judgment as a matter of law. Because the defendants have met their burdens as to Counts One and Two, the burden now shifts to MRL to show by competent evidence that material facts are in genuine dispute or that the defendants are not entitled to judgment as a matter of law.

MRL does not argue that any of the above-established facts are in dispute. Instead, MRL asserts that despite those facts, the defendants are not entitled to judgment as a matter of law. Specifically, MRL argues that the discovery rule tolled the running of the statute of limitations. In support of its contentions, MRL directs the Court to the Lucht deposition and an affidavit submitted by Lucht. In his deposition, Lucht avers that "[he] wasn't aware of what the major issue was." (Lucht Dep., Feb. 25, 2014, 64:17-23.) Lucht further states directly that "Plaintiffs did not know of the cause of the bad wood in the home until after February of 2011." (Lucht aff., Sept. 22, 2014, ¶ 11.)

MRL asserts that these facts allow tolling. MRL argues that the UCC states that "[t]his section does not alter the law on tolling of the statute of limitations nor does it apply to causes of actions which have accrued before this Act becomes effective." V.I. CODE ANN. tit. 11A, § 2-725(4)("Subsection 4").

MRL Dev. I, Inc. v. Whitecap Inv. Corp.
Civil No. 2013-48
Memorandum Opinion
Page 17

Because this subsection of the statute of limitations may impact the rule that a claim for breach of a UCC contract accrues when the breach occurs, "regardless of the aggrieved party's lack of knowledge of the breach," V.I. CODE ANN. tit. 11A, § 2-725(2), a closer review of Subsections 2 and 4 is needed.

The Virgin Islands Code, in which the provisions of the UCC are found, states that

> § 2-725.   Statute of limitations in contracts for sale
>
> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .
>
> (2) A cause of action accrues when the breach occurs, *regardless of the aggrieved party's lack of knowledge of the breach.* . . .
>
> . . . .
>
> (4) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this title becomes effective.

V.I. CODE ANN. tit. 11A, § 2-725 ("Section 2-725"). The purpose of this section is "[t]o introduce a uniform statute of limitations for sales contracts, thus eliminating the jurisdictional variations and providing needed relief for concerns doing business on a nationwide scale whose contracts have heretofore been governed by several different periods of limitation

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 18

depending upon the state in which the transaction occurred." U.C.C. Text § 2-725 (official comment).

"In interpreting a statute, courts should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation which renders an element of the language superfluous . . . . Thus, the preferred construction of a statute and its regulations is the one that gives meaning to all provisions." *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998)(internal citations omitted); *see also Kendall v. Russell*, 572 F.3d 126, 143 (3d Cir. 2009)("It is a well known canon of statutory construction that courts should construe statutory language to avoid interpretations that would render any phrase superfluous.")

The plain language of Subsection 2 explicitly states that "[a] cause of action accrues when the breach occurs, *regardless of the aggrieved party's lack of knowledge of the breach*." V.I. Code Ann. tit. 11A, § 2-725(2) (emphasis added). As the discovery rule's application is based on a plaintiff's lack of knowledge, this provision of the UCC would seem to prohibit the discovery rule's application to UCC claims. At the same time, the UCC also states "[t]his section does not alter the law on tolling of the statute of limitations[.]" *Id.* Neither the Virgin Islands Code nor the UCC itself defines what constitutes "the law on

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 19

tolling." The Court is unaware of a definition being provided by Virgin Islands caselaw. As such, the Court must determine, as a matter of first impression, whether "the law on tolling" includes the discovery rule.

The verb "to toll" means "to stop the running of; to abate." Toll, *Black's Law Dictionary* (9th ed. 2009). There are two doctrines which have some arresting effect on the statute of limitations, the discovery rule and equitable estoppel, which are both typically considered to "toll" the statute of limitations. Yet, it is the timing at which each doctrine may be triggered that is significant to appreciating their distinctive roles.

> By way of summary, the discovery rule and the equitable tolling doctrine are similar in one respect and different in another. The doctrines are similar in that each requires a level of diligence on the part of the plaintiff; that is, each requires the plaintiff to take reasonable measures to uncover the existence of injury. The plaintiff who fails to exercise this reasonable diligence may lose the benefit of either doctrine. The two doctrines differ, however, with respect to the type of knowledge or cognizance that triggers their respective applications. The discovery rule keys on a plaintiff's cognizance, or imputed cognizance, of actual injury. Equitable tolling, on the other hand, keys on a plaintiff's cognizance, or imputed cognizance, of the facts supporting the plaintiff's cause of action. Underlying this difference between the discovery rule and equitable tolling is the more fundamental difference in purpose between the two rules. *The purpose of the discovery rule is to determine*

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 20

> *the accrual date of a claim*, for ultimate
> purposes of determining, as a legal matter, when
> the statute of limitations begins to run.
> *Equitable tolling . . . presumes claim accrual.*
> *Equitable tolling steps in to toll, or stop, the*
> *running of the statute of limitations* in light
> of established equitable considerations.

*Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1390

(3d Cir. 1994)(internal citations omitted)(emphasis supplied).

Equitable tolling, unlike the discovery rule, flows from the

"fundamental equitable principle" that a defendant should not be

able to profit from his wrongful or inequitable conduct. *Id.* at

1392.

Equitable tolling is based on equitable concerns, such as

the defendant's concealment of facts necessary to the

plaintiff's action. *See id.* at 1390-92.

> The caselaw is instructive. The Supreme Court
> has held that equitable tolling may be
> appropriate when a claimant received inadequate
> notice of her right to file suit, where a motion
> for appointment of counsel is pending, or where
> the court has misled the plaintiff into
> believing that she had done everything required
> of her . . . . [The Third Circuit] expressed a
> willingness to invoke equitable tolling in a
> number of other circumstances: when the
> defendant has actively misled the plaintiff;
> when the plaintiff "in some extraordinary way"
> was prevented from asserting her rights; or when
> the plaintiff timely asserted her rights in the
> wrong forum.

*Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d

Cir. 1999). To address these extraordinary types of

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 21

circumstances, impediments outside of the plaintiff's control or defendant wrongdoing, equitable tolling arrests the running of the limitations period of an *accrued* action.

The discovery rule is focused on the plaintiff's diligence and knowledge. It prevents or *forestalls accrual* of an action. *See Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006)("Under the rule, even if a plaintiff suffers an injury, the statute of limitations *does not begin to run* until "the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct."(emphasis added)); *New Castle Cnty. v. Halliburton NUS Corp.*, 111 F.3d 1116, 1124-25 (3d Cir. 1997)("The discovery rule functions to delay the initial running of the statutory limitations period. . . . Once the plaintiff has discovered the injury, the statutory limitations period begins to run and the plaintiff is entitled to the full limitations period.")

The subtle differences between the discovery rule and equitable tolling may indicate that "the law on tolling" does not refer to the discovery rule at all, but rather solely to equitable tolling. The discovery rule, as the Third Circuit stated, does not actually "toll" the statute of limitations, but shifts the day on which the claim accrued. *See id.* at 1390. By contrast, equitable tolling assumes that the claim accrued at

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 22

the date of injury, but tolls or stops the running of the statute of limitations due to equitable considerations. *See id.* at 1390.

A reading of the statute which allows application of the discovery rule would, in effect, negate the language which states that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." V.I. CODE ANN. tit. 11A, § 2-725(2). There is no need to include this language if the discovery rule is not prohibited. After all, a claim for breach of contract normally accrues on the date of the breach. *See, e.g., Nat'l Util. Serv., Inc. v. Cambridge-Lee Indus., Inc.*, 199 F. App'x 139, 142 (3d Cir. 2006)(considering the date of accrual for a common law contract). A reading of Section 2-725 to prohibit application of the discovery rule would not have this same problem. Instead, the provision which provides that "[t]his section does not alter the law on tolling of the statute of limitations[,]" *id.*, can be read to reach only equitable tolling. Thus, the canons of statutory construction, which instruct the Court to interpret a statute in order to give effect to each provision, support an interpretation excluding the discovery rule from "the law on tolling." *See Duncan v. Walker*, 533 U.S. 167, 174 (2001)("It is

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 23

our duty to give effect, if possible, to every clause and word
of a statute.")

A reading that excludes application of the discovery rule
is also supported by caselaw. The majority of circuit courts to
have considered whether the discovery rule tolls the UCC's
statute of limitations have found that it does not. *See, e.g.*,
*Lockheed Martin Corp. v. RFI Supply, Inc.*, 440 F.3d 549, 557-58
(1st Cir. 2006); *Hull v. Eaton Corp.*, 825 F.2d 448, 456-57 (D.C.
Cir. 1987); *Std. Alliance Indus., Inc. v. Black Clawson Co.*, 587
F.2d 813, 821-22 (6th Cir. 1978).

In *Hull v. Eaten Corp.*, 825 F.2d 448 (D.C. Cir. 1987), the
District of Columbia Circuit considered whether to apply the
discovery rule in a breach of contract action under the UCC.
The Court found that, though the local courts had applied the
discovery rule in other contexts, it would be incorrect to apply
the discovery rule to breach of contract claims under the UCC.
*Hull*, 825 F.2d at 456-57. Other causes of action, the Court
stated, left the time of accrual undefined. *Id.* By contrast,
the UCC was explicit that the cause of action accrued when
breach occurred, regardless of the injured party's knowledge.
*Id.* In the absence of explicit local law to the contrary, the
Court declined to extend the discovery rule to UCC contract
claims. *See id.*

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 24

This conforms with the Third Circuit's consideration of the discovery rule's application to claims brought under Article Three of the UCC. The Third Circuit stated that uniformity and finality in commercial transactions is the bedrock which underlies the UCC. *See Menichini v. Grant*, 995 F.2d 1224, 1229-1230 (3d Cir. 1993)(declining to apply the discovery rule in negotiable instrument fraud under the UCC); *accord Son v. Coal Equity, Inc.*, 122 F. App'x 797, 801 (6th Cir. 2004). The application of the discovery rule would undermine those principles. *See Menichini*, 995 F.2d at 1229-1230. As such, the Third Circuit declined to apply the discovery rule in a UCC claim of negotiable instrument fraud. *See id.* This is also consistent with prior opinions in local courts. *See Fombrun v. Controlled Concrete Prods.*, 21 V.I. 578, 582-83 (Terr. Ct. 1985)(declining to apply the discovery rule in a UCC contract breach claim).

Like in *Hull*, this Court is faced with a very explicit statute, which states that the statute begins to run on the date of breach, regardless of the aggrieved party's knowledge. V.I. CODE ANN. tit. 11A, § 2-725(2). The Court is also tasked with reading that provision in conjunction with the subsection of Section 2-725 which states that it does not alter the law on tolling. *See id* § 2-725(4). Section 2-725 cannot be read in a

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 25

way which renders superfluous any of its language. *See Idahoan Fresh*, 157 F.3d at 202. As in *Hull*, there is no local statute which speaks to the discovery rule's application in these circumstances.

The Court finds that Section 2-725 should not be read as including the discovery rule in "the law on tolling."  First, by its plain terms, Section 2-725 would seem to prohibit the discovery rule's application. Second, a reading allowing the application of the discovery rule to such claims would render superfluous Subsection 2's language which states "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." V.I. CODE ANN. tit. 11A, § 2-725. Third, the UCC's goals of uniformity and finality in the commercial context are better served by a finding that the discovery rule cannot be applied to UCC actions. *See Menichini*, 995 F.2d at 1229-1230. Considering the language and purpose of the statute, the canons of statutory construction, and the weight of circuit authority on the issue, the Court will not read the UCC as permitting application of the discovery rule to breach of contract actions.

Though the discovery rule is unavailable, the language of Subsection 4 contemplates that equitable tolling may still be permitted.

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 26

> Equitable tolling applies when a plaintiff has
> "been prevented from filing in a timely manner
> due to sufficiently inequitable circumstances."
> *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165
> F.3d 236, 240 (3d Cir.1999). This occurs "(1)
> where the defendant has actively misled the
> plaintiff respecting the plaintiff's cause of
> action; (2) where the plaintiff in some
> extraordinary way has been prevented from
> asserting his or her rights; or (3) where the
> plaintiff has timely asserted his or her rights
> mistakenly in the wrong forum." *See Robinson*,
> 107 F.3d at 1022 (applying this test in a Title
> VII action against the Government). The
> plaintiff, however must "exercise due diligence
> in preserving his claim." *Irwin*, 498 U.S. at 96,
> 111 S.Ct. 453. Equitable tolling is an
> extraordinary remedy which should be extended
> only sparingly.

*Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005). The

plaintiff bears the burden of showing that the equitable tolling

doctrine applies. *Hammer v. Cardio Med. Prods.*, 131 F. App'x

829, 831 (3d Cir. 2005). Indeed, nowhere has MRL made even an

assertion that equitable tolling applies, nor has MRL provided

any evidence on the issue.

Here, the pleading and record evidence adduced by Paradise

Lumber and the Putnam Defendants establish that the conduct in

this case is not of the kind or species that would give rise to

the extraordinary remedy of equitable tolling. *See Hedges*, 404

F.3d at 751 ("Equitable tolling is an *extraordinary remedy* which

should be *extended only sparingly*."(emphasis added)). There is

no evidence on the record which indicates that Paradise Lumber

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 27

or the Putnam Defendants has actively misled MRL respecting

MRL's cause of action.  There is no evidence that MRL has been

prevented from asserting its rights in some extraordinary way.

Finally, there is no record evidence that MRL timely asserted

its rights mistakenly in the wrong forum. Given the lack of any

extraordinary circumstances in this case that might necessitate

equitable tolling, the Court finds that tolling would be

inappropriate in this instance.

Because the Court finds that the discovery rule and

equitable tolling are inapplicable in this instance, the

evidence submitted by MRL does not establish a genuine dispute

of any material fact. Though the parties disagree about when MRL

discovered the injury, the date of discovery is irrelevant to a

contract claim under the UCC. *See* V.I. CODE ANN. tit. 11A, § 2-725

("A cause of action accrues when the breach occurs, regardless

of the aggrieved party's lack of knowledge of the breach.")

MRL has not met its burden of establishing that there is a

genuine dispute of material fact, nor has MRL shown that the

defendants are not entitled to judgment as a matter of law.

Paradise Lumber and the Putnam Defendants have shown by

competent evidence that there is no genuine dispute of material

fact, and on the facts they are entitled to judgment as a matter

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 28

of law. As such, summary judgment is appropriate on Counts One

and Two.

**b. Count III: Breach of Warranty**

Count Three alleges a breach of warranty claim against all

defendants. The defendants all seek summary judgment on Count

Three, arguing that such a claim is time-barred. With regard to

MRL's breach of warranty claims against the defendants in Count

Three, the claims, like the underlying contract claims, are

problematic. As discussed above, the basic purpose of the lumber

contracts was the sale and purchase of a tangible good.  Such

contracts are covered by the UCC. *See, e.g., Std. Bent Glass

Corp.*, 333 F.3d at 450 (applying the UCC to the sale of a glass

fabricating machine); *Olefins Trading*, 9 F.3d at 287 (applying

the UCC to the sale of ethylene); *White*, 26 V.I. at 90 (applying

the UCC to the sale of pear nectar).

Where, as here, the contract underlying a warranty claim

falls within the UCC, the warranty claim falls within the UCC's

purview as well. *See, e.g., Paramount Aviation Corp.*, 288 F.3d

at 73-74 (discussing the warranties that attach under the UCC to

contracts for the sale of goods); *see also* V.I. CODE ANN. tit.

11A, §§ 2-313, 2-314, 2-315. Because the UCC applies, "[a]

breach of warranty occurs when tender of delivery is made,

except that where a warranty *explicitly* extends to future

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 29

performance of the goods and discovery of the breach must await

the time of such performance the cause of action accrues when

the breach is or should have been discovered." V.I. CODE ANN. tit.

11A, § 2-725 (emphasis added).  Thus, in this case, the statute

of limitations would have begun to run no later than December,

2006, unless an explicit warranty of future performance was

given by one or more defendants.

Rourke testified that no explicit warranty of any kind was

ever given by Paradise Lumber. (Rourke Dep. 52:6-21.) This is

consistent with Lucht's testimony regarding the treatment or

performance of the wood. (Lucht Dep. 56:9-12 ("Q: Did Mr.

Humbaugh [a Paradise Lumber employee], to your knowledge, give

you any representations as to the quality of the pressure

treatment that was being used? A: No.").) Lucht further averred

that he was unaware that pressure treated lumber could use

different chemicals, and that he did not request any specific

type of chemical treatment or specify a use category. (Id.

56:19-57:24.)

Lack of an express warranty of future performance supports

Paradise Lumber's petition for judgment as a matter of law. The

evidence put forth by Paradise Lumber establishes that there was

no express warranty of future performance. As such, Paradise

Lumber has demonstrated it is entitled to judgment as a matter

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 30

of law on MRL's warranty claim against it and has met its burden.

Thus, the burden now shifts to MRL to establish that there exists a genuine dispute of material fact that does not allow judgment to be awarded to Paradise Lumber as a matter of law. MRL has not submitted any competent evidence which contradicts Paradise Lumber's representations. Instead, MRL relies again on its argument that the statute of limitations was tolled. As above, where the warranty falls within the UCC, this argument is unavailing.

Where there is no explicit promise or representation as to future performance, the UCC's statute of limitations begins to run as soon as "tender of delivery is made[.]" *Id.* All deliveries of the allegedly defective lumber must have occurred no later than December, 2006. Because the UCC provides a four-year statute of limitations, which commenced no later than December, 2006, the statute of limitations ran in December, 2010, at the latest. MRL filed its complaint in February, 2013. As such, Paradise Lumber is entitled to judgment on Count Three as a matter of law.

Turning to Count Three as against GSWP, GSWP contends first that the claim was brought untimely, and second that MRL has failed to state a claim for breach of warranty.

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 31

There are four elements to a contract or warranty claim in the Virgin Islands: "(1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages." *Bank of Nova Scotia v. Ross*, Civ. No. 2010-118, 2012 WL 4854776 (D.V.I. Oct. 12, 2012)(slip op.)(citing to *Arlington Funding Services, Inc. v. Geigel*, 51 V.I. 118, 135 (V.I. 2009)). An agreement may be either express, one which is stated in oral or written words, or implied wholly or partially from the parties' conduct.  Restatement (Second) of Contracts § 4; *see Delta Elec. V. Biggs*, 2011 WL 4463211, *3 (D.V.I. App. Div. 2011).  "A party who breaches a contract is liable for all natural and probable consequences of the breach of that contract." *Mendez v. Coastal Sys. Dev., Inc.*, 2008 WL 2149373, *12 (D.V.I. 2008).

In support of its contention that the statute of limitations ran on MRL's breach of warranty claim, GSWP directs the Court to the deposition testimony of William Freeman ("Freeman"), corporate representative of GSWP, to support that assertion.  In his deposition, Freeman states that "they've never had any warranty on anything that has been exported," when selling wood owned by GSWP (Freeman Dep. 42:21-22.) Freeman also averred that wood which is provided by other companies purely for treatment services, or Treatment Services Only wood, also

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 32

"does not carry any warranty. . . . So that side of it we don't

have a warranty on TSO." (*Id.* 44:11-18.)

"A breach of warranty occurs when tender of delivery is

made, except that where a warranty *explicitly* extends to future

performance of the goods and discovery of the breach must await

the time of such performance the cause of action accrues when

the breach is or should have been discovered." V.I. CODE ANN. tit.

11A, § 2-725.

GSWP has put forth competent evidence establishing that no

explicit warranty of future performance was given to purchasers

of GSWP lumber. Such evidence would entitle GSWP to judgment as

a matter of law. The burden thus shifts to MRL to provide

competent evidence establishing that a genuine dispute of

material fact, such that GSWP is not entitled to judgment as a

matter of law, exists.

MRL does not provide any new competent evidence for the

Court to consider in its opposition.  Instead, MRL asserts that

the purchased retention levels constituted a warranty. MRL does

not adduce how long different retention levels are expected to

last when built into structures, and points to no language

evincing an explicit warranty of future performance. MRL has

failed to demonstrate any form of agreement which extended the

statute of limitation. MRL also relies on its argument that the

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 33

statute of limitations was tolled by the discovery rule.  As

before, this argument is unavailing.[2]

---

[2] Even if GSWP provided warranties to its direct purchasers, the Putnam Defendants, it is not clear that MRL could benefit from such warranties. Generally, a person must be in privity to sue for damages for breach of a contract or warranty. *See Harper v. Government of the Virgin Islands*, Civ. No. 91-1981, 1982 U.S. Dist. LEXIS 9416, at *6 (D.V.I. Apr. 14, 1982). "However, under certain conditions a person may sue as a third party beneficiary to a contract." *Id*. Under the Restatement (Second) of Contracts, a third-party beneficiary is either intended or incidental. Section 302 of the Restatement defines intended and incidental beneficiaries as follows:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (footnote continued on page 25)
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302 (1981).

"Virgin Islands law specifically extends express and implied warranties to third-party beneficiaries. Title 11A, Section 2-318 of the Virgin Islands Code provides that a seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and *who is injured in person by breach of the warranty*." *Matos v. Nextran, Inc.*, No. CIV. 2008-65, 2009 WL 2477516, at *3 (D.V.I. Aug. 10, 2009)(internal quotation omitted)(emphasis supplied).

Both the Third Circuit, applying an identical UCC provision in New Jersey law, and this Court, have held that the statute requires a third-party beneficiary to suffer an injury to person in order to bring a breach of warranty claim. *See Paramount Aviation Corp. v. Agusta*, 288 F.3d 67, 75 (3d Cir. 2002) (finding in dicta that there is "implicit in Section 2-318 a clearly expressed legislative policy choice limiting recovery by such third parties to damages for personal injuries."); *Hedges v. United States*, 2003 U.S. Dist. LEXIS 23383, *11-12 (D.V.I. June 30, 2003)("Where no Virgin Islands cases direct otherwise, this Court must apply § 2-318 in accordance with its plain language. . . . Because Plaintiff in this case claims injury to his vessel rather than his person, he has alleged no set of facts that would entitle him to relief for breach of warranty.")

In *Hedges v. United States*, 2003 U.S. Dist. LEXIS 23383 (D.V.I. June 30, 2003), Hedges asserted a third-party beneficiary warranty claim against the United States. *Hedges v. United States*, 2003 U.S. Dist. LEXIS 23383, *10. Hedges alleged it was a third-party beneficiary to agreements regarding maintenance and repair of maritime

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 34

Finally, the Putnam Defendants allege that the statute of limitations ran on MRL's warranty claim against them. Specifically, the Putnam Defendants argue that no express warranty was given to any purchasers. As such, the statute of limitations began running when the wood at issue was delivered. The Putnam Defendants argue, in essence, that there is no evidence on the record that any explicit warranty of future performance was made. "[A] party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record." *Celotex Corp.*, 477 U.S. at 332. In support of their motion for summary judgment, the Putnam Defendants cite to the deposition testimony of Lucht himself.  Lucht testified that he was not aware of any representations or warranties that were provided by

---

moorings between the United States and a third party. *Id*. Hedges argued that the mooring agreements were breached, resulting in damage to his marine vessel. *Id*. at *10-*11. The Court, in interpreting the plain language of the UCC, held that this was not an "injury in person" as required by the statute. *Id*.

In this case, MRL asserts in its complaint that it has suffered injury in the form of damage to the addition and deck – objects into which the wood at issue was incorporated. The injuries complained of in MRL's complaint are quite similar to those suffered in *Hedges*. They are injuries to objects, not people.  As such, the Court finds *Hedges* instructive in this matter.

GSWP argues that there is no evidence, or even allegation, of a personal injury such that MRL may recover under any warranty as a third-party beneficiary. "[A] party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986). In support of its motion, GSWP directs the Court's attention first to MRL's complaint, which contains only allegations of harm to MRL's home and deck.  GSWP also directs the Court's attention to MRL's deposition, and the lack of any mention that injury was suffered by anything other than MRL's home. GSWP has thus met its burden in showing there is a complete absence of evidence that there was any personal injury suffered by MRL in this instance.

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 35

the Putnam Defendants with regards to the lumber at issue.
(Lucht Dep. 105:20-106:2.) A thorough review of the record also
reveals no evidence suggesting that the Putnam Defendants gave
an explicit warranty as to the lumber's future performance. The
lack of an explicit warranty would entitle the Putnam Defendants
to judgment as a matter of law.  As such, the burden shifts to
MRL to provide evidence showing a genuine dispute of material
fact or that the Putnam Defendants are not entitled to judgment
on the law.

MRL does not provide any new competent evidence for the
Court to consider in its opposition.  Instead, MRL again asserts
that the purchased retention levels constituted a warranty. MRL
does not adduce how long different retention levels are expected
to last when built into structures, and points to no language
evincing an explicit warranty of future performance. MRL also
relies on its argument that the statute of limitations was
tolled.  As before, this argument is unavailing.[3]

---

[3] As discussed in reference to GSWP, assuming *arguendo*, that the Putnam
Defendants had made explicit warranties of future performance, it is unclear
that MRL could benefit from them.  As before, MRL was not in privity with the
Putnam Defendants, and could only bring a claim as a third-party beneficiary.
To make a claim for breach of warranty as a third-party beneficiary, MRL
would have to show it suffered injury in person.  Such injury is not alleged
here.

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 36

Because there is no genuine dispute as to a material fact, and the Putnam Defendants are entitled to judgment as a matter of law, summary judgment is appropriate on Count Three.

## 2. Counts Four and Five: Negligence and Strict Liability

In Count Four, MRL alleges a negligence claim against all defendants in this case.  In Count Five, MRL alleges strict liability as against all of the defendants. The defendants have all moved for summary judgment on Counts Four and Five.

Both negligence and strict liability claims sound in tort, and are subject to a two year statute of limitations. *In re Tutu Wells Contamination Litig.*, 846 F. Supp. 1243, 1258, 29 V.I. 41 (D.V.I. 1993).  This time period is subject to tolling under the discovery rule. *Id.* The discovery rule provides that a claim "does not accrue for statute of limitations purposes until the plaintiff possesses actual or constructive knowledge of the injury and its cause." *Warner*, 164 F. App'x at 220.

Because both Counts Four and Five sound in tort, and because such claims are asserted in a matter also claiming damages in contract, they implicate the gist of the action doctrine.

> The gist of the action doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, *the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims.* In some

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 37

> circumstances, it is possible that a breach of
> contract also gives rise to an actionable tort.
> To be construed as in tort, however, the wrong
> ascribed to defendant must be the gist of the
> action, the contract being collateral.

*Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541,

548 (3d Cir. 2010)(emphasis supplied).

> Thus, while the existence of a contractual
> relationship between two parties does not
> prevent one party from bringing a tort claim
> against another, the gist of the action doctrine
> precludes tort suits for the mere breach of
> contractual duties unless the plaintiff can
> point to separate or independent events giving
> rise to the tort. Generally, courts apply the
> gist of the action doctrine when the claims are
> (1) arising solely from a contract between the
> parties; (2) where the duties allegedly breached
> were created and grounded in the contract
> itself; (3) where liability stems from a
> contract; or (4) where the tort claim
> essentially duplicates a breach of contact claim
> or the success of which is wholly dependent on
> the terms of a contract.

*Addie v. Kjaer*, 737 F.3d 854, 865-66 (3d Cir. 2013).

In *Addie v. Kjaer*, 737 F.3d 854 (3d Cir. 2013), the

plaintiffs asserted fraud claims against the defendants. *Id*. at

866. The plaintiffs argued that the defendants had

misrepresented their ability to comply with certain contract

terms. *Id*. at 867. The Court of Appeals for the Third Circuit

stated the fraud claims were barred by the gist of the action

doctrine. *See id*. What the plaintiffs were actually asserting,

the Third Circuit found, was that the defendants had not

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 38

complied with a contractual term. *See id*. Though

misrepresentation may have been involved, that the

misrepresentations became part of the contract changed them to

contractual claims. *See id*. As such, the fraud claims were

barred.

Here, MRL argues that the defendants breached their duties

of care under tort law by failing to treat the lumber at issue

in conformity with the contracts between the parties.  This is

quite similar to the state of affairs in *Addie v. Kjaer*. The bad

act alleged is based on a failure to comply with something

included in the relevant contract.  Where the tort only occurs

upon violation of a contractual term, the tort claim cannot be

brought under the gist of the action doctrine. *Addie v. Kjaer*,

737 F.3d at 865-66. These claims are thus the precise sorts of

claims that are barred by the gist of the action doctrine as a

matter of law.

Even assuming, *arguendo*, that were not the case, such

claims would still fail. GSWP, the Putnam Defendants, and

Paradise Lumber contend that MRL was or should have been aware

of the injury in this case, and its cause, in 2010.  Thus, the

defendants argue, these claims were time-barred when MRL filed

its complaint in 2013. In support of its argument, GSWP relies

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 39

on the original complaint filed in February, 2013.  GSWP also directs the Court to the deposition testimony of Lucht.

In the original complaint, MRL stated that "it was not until 2010 that the plaintiffs discovered the wood was defective." (Compl. ¶ 1.)  This comports with Lucht's deposition testimony that he began having to replace rotting boards in 2010. (Lucht Dep., Feb. 25, 2014, 64:17-23.) These facts show that the date of discovery occurred in 2010. Unless disputed, such facts would entitle the defendants to judgment as a matter of law on Counts Four and Five.

As the defendants have met their burden, the burden now shifts to MRL to show that there is a genuine dispute of material fact which would preclude judgment. *Gans*, 762 F.2d at 342.  MRL argues that the discovery rule tolled the statute of limitations, because the cause of the injury was not known until February, 2011.  Where a plaintiff seeks to toll the statute of limitations under the discovery rule,

> [t]he plaintiff has the burden of justifying any delay beyond the date on which the limitation would have expired if computed from the date on which the acts giving rise to the cause of action allegedly occurred. He must allege and prove facts which show that he made reasonable efforts to protect his interests and which explain why he was unable to discover the operative facts for his cause of action sooner than he did.

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 40

*Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir. 1985)(internal quotations and citations omitted).

In support of MRL's argument that the discovery rule requires tolling the statute of limitations in this case, MRL directs the Court to the deposition of Lucht and an affidavit by Lucht. In his deposition, Lucht testified that from 2010 to 2011, he was replacing rotting boards but "[he] wasn't aware of what the major issue was." (Lucht Dep., Feb. 25, 2014, 64:17-23.) In his affidavit, Lucht states directly that "Plaintiffs did not know of the cause of the bad wood in the home until after February of 2011." (Lucht aff., Sept. 22, 2014, ¶ 11.)

What is noticeably missing from MRL's response is any description of what "reasonable efforts to protect his interests," MRL undertook, or "which explain why he was unable to discover the operative facts for his cause of action sooner than he did." *Van Buskirk*, 760 F.2d at 487. Lucht began finding rotting wood in his deck no later than in 2010. In Lucht's deposition, Lucht states that at some point (the date was never made clear in Lucht's testimony) he had a conversation with a carpenter on St. John in which Lucht mentioned the rotting boards. (Lucht Dep., Feb. 25, 2014, 75:16-76:5.) Lucht goes on to testify that the carpenter mentioned that the carpenter had been replacing bad wood all over the island. (*Id.* 76:4-5.)

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 41

Thereafter, Lucht went to Paradise Lumber and asked to speak with someone about bad wood. (*Id.* 76:7-11.) At that point, Lucht decided to do something about the rotting wood. (*Id.* 76:12-14)("So I figured the word was pretty much out. And so from that point I decided that I needed to, you know, try and maneuver my way through this.")

In *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481 (3d Cir. 1985), the Third Circuit was faced with determining whether a plaintiff had undertaken reasonable efforts to protect his interest.  In *Van Buskirk*, the plaintiff had some understanding and information about asbestosis. *Van Buskirk*, 760 F.2d at 487. The plaintiff received x-ray reports that showed he had asbestosis more than two-years prior to the commencement of the law suit. *Id*. Considering that he had received x-ray reports showing the injury, and given his background knowledge, the Third Circuit found that at the date of the injury the plaintiff had reason to know the injury and it's cause. *See id*.

It is unclear to the Court how MRL's actions in this matter constitute reasonable efforts to protect MRL's interests.  As early as 2010, MRL began replacing wood in his deck that, by his own testimony, was rotting.  He further testified by deposition that he was under the impression that the wood he had purchased would last for fifty years and that he had used pressure treated

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 42

lumber before. MRL also knew where the wood came from, Paradise Lumber.

Like the plaintiff in *Van Buskirk*, between MRL's background knowledge and his knowledge of the injury, he had reason to know the cause. *See id.* At the very least, at that time MRL knew the facts necessary to begin some reasonable investigation. *Cf. O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 710 (3d Cir. 1981)(finding that a plaintiff who knew enough about her injury to investigate it but failed to could not toll the statute of limitations). Nothing is suggested on the record that might have counseled against such an investigation. Instead, MRL appears to have waited until an unrelated dinner with a friend who happened to be a carpenter. As such, MRL has failed to meet its burden of showing that tolling is merited in this case.

**3. Count Six: Deceptive Trade Practices**

In Count Six, MRL alleges a claim of deceptive trade practices against all defendants. The defendants have each moved for summary judgment on Count Six.

Virgin Islands law prohibits "any deceptive or unconscionable trade practice in the sale, lease, rental or loan or in the offering for sale, lease, rental, or loan of any consumer goods or services, or in the collection of consumer debts." *See* V.I. CODE ANN. tit. 12A, § 101. The Virgin Islands

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 43

Code defines what constitute deceptive and unconscionable trade

practices as:

> (a) 'Deceptive trade practice' means any false,
> falsely disparaging, or misleading oral or
> written statement, visual description or other
> representation of any kind made in connection
> with the sale, lease, rental, or loan of
> consumer goods or services . . . which has the
> capacity, tendency or effect of deceiving or
> misleading consumers. Deceptive trade practices
> include but are not limited to:
>
> (1) representations that goods or services have
>      sponsorship, approval, accessories,
>      characteristics, ingredients, uses,
>      benefits, or quantities that they do not
>      have;. . . or goods or services are of
>      particular standard, quality, grade, style
>      or model, if they are of another;
> (2) the use, in any oral or written
>      representation, of exaggeration, innuendo
>      or ambiguity as to a material fact or
>      failure to state a material fact if such
>      use deceives or tends to deceive;
>
>                     * * *
>
> (4) offering goods or services with intent not
>      to sell them as offered;
>
>                   * * * *
>
> (b) 'Unconscionable trade practice' means any
> act or practice in connection with the sale,
> lease, rental or loan or in connection with the
> offering for sale, lease, rental or loan of any
> consumer goods or services . . . which unfairly
> takes advantage of the lack of knowledge,
> ability, experience or capacity of a consumer;
> or results in a gross disparity between the
> value received by a consumer and the price paid,
> to the consumer's detriment . . . .

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 44

V.I. CODE ANN. tit. 12A, § 102 (Definitions).

A consumer may bring an action to enforce the Virgin
Islands Code's prohibition on these practices. *Id*. § 108
(Private Remedies). The period within which such an action must
be commenced is outlined in the Deceptive Trade Practices Act
("DTPA"). As of October, 2013, the DTPA provides that "[t]he
statute of limitations under this section is governed by Title 5
Virgin Islands Code § 31(3)(8)." *See* V.I. CODE ANN. tit. 12A, §
108(j). Title 5, Section 31(3)(B) sets a six-year limitation
period for actions on liabilities created by statute.[4] Therefore,
as of October, 2013, the statute of limitations for private
actions brought under the DTPA is six years.

Significantly, when MRL filed its complaint in February,
2013, the statute of limitations for DTPA claims was two years.
*See* V.I. CODE ANN. tit. 12A, § 108(j)(2012). In October, 2013, the
DTPA was amended to extend the limitations period to six years.
Thus, the Court must determine whether the two-year statute of
limitations in effect when the case was filed, or the six-year

_____

[4] Notably, there is no Section 31(3)(8). *See* V.I. CODE ANN. tit. 5, § 31(3).
Section 31(3) has four subsections, which are identified as (A) through (D).
*Id*. The Court notes that the number "8" looks most similar to the letter "B."
It is very likely that "B" was transposed at some point to "8." That
likelihood is heighted, as Section 31(3)(B) sets the statute of limitations
for "[a]n action upon a liability created by statute, other than a penalty or
forfeiture[,]" and the DTPA is a statute that creates a liability. The Court
need not decide that issue, however, because the entirety of Section 31(3)
sets the same six-year statute of limitations. *See* V.I. CODE ANN. tit. 5, §
31(3).

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 45

statute of limitations that came into effect thereafter,

governs.[5]

     In *Lieberman v. Cambridge Partners, LLC*, 432 F.3d 482 (3d

Cir. 2005), the Third Circuit was tasked with determining if a

newly passed statute could revive otherwise stale actions.

*Lieberman v. Cambridge Partners, LLC*, 432 F.3d 482, 482 (3d Cir.

2005).  The Third Circuit, following precedent from the United

States Supreme Court, stated that "extending a statute of

limitations after the pre-existing period of limitations has

expired impermissibly revives a moribund cause of action." *Id*.

at 489 (citing *Hughes Aircraft Co. v. United States ex rel*.

*Schumer*, 520 U.S. 939, 950 (1997)).  In accord with that maxim,

this Court will apply the two-year limitation period in effect

at the time MRL filed its complaint if MRL's action was time-

barred before October, 2013.

     To determine a starting point from which the limitation

period started to run, the Court must assess when a DTPA claim

─────────────────────

[5] Interestingly, the parties, without providing any legal authority, seem to
proceed on the assumption that the six-year limitations period governs.  Of
course, it is well established that parties cannot stipulate to questions of
law. *Mazer v. Lipschutz*, 327 F.2d 42, 57 (3d Cir. 1963)("Counsel can
stipulate fact, but ordinarily cannot stipulate or concede law.") "Which
statute of limitations applies to a claim is a question of law[.]" *Bernstein
v. Bankert*, 733 F.3d 190, 218 (7th Cir. 2013) *cert. denied*, 134 S. Ct. 1024
(2014). As a result, the parties' seeming agreement on the applicable statute
of limitations does not control the Court's consideration of what the law is
and was.

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 46

accrues. On that point, the Third Circuit has counselled that
the DTPA limitations period "begins running from the date the
violation of the statute occurred, not the date the violation
was discovered[.]" *See Island Insteel Sys., Inc. v. Waters*, 296
F.3d 200, 214 (3d Cir. 2002).

The DTPA is quite thorough in its listing of what deceptive
practices constitute violations of the DTPA.  *See* V.I. CODE ANN.
tit. 12A, § 102. Though there are a variety of ways for sellers
to violate the statute, the Court notes that each of the
prohibited activities has something in common: it is some form
of *pre-sale conduct* designed or used to trick consumers into
purchasing, leasing, or renting something. *See id*. The statute
of limitations on actions under the DTPA would thus begin
running prior to or at the time of sale, and no later.

GSWP, the Putnam Defendants, and Paradise Lumber argue that
because the DTPA prohibits pre-sale behavior, any alleged
deceptive trade practices must have occurred prior to December,
2006.  In support of that proposition, GSWP directs the Court to
the deposition of Lucht.  In his deposition, Lucht testifies
that all construction using the wood at issue in this case
concluded in December, 2006. Thus, the alleged misrepresentation
that MRL complains of in the amended complaint, that the wood
was fit for a particular purpose, must have occurred prior to

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 47

December, 2006. At the latest, violation of the DTPA could have occurred no later than December, 2006. The statute of limitations thus would have run no later than December, 2008. MRL filed its complaint well out of time in February, 2013.[6]

These facts, if uncontroverted, would entitle the defendants to judgment in their favor as a matter of law. As such, the burden shifts to MRL to provide evidence showing a genuine dispute of material fact or that the defendants are not entitled to judgment on the law.

MRL, in its opposition, fails to address the issue of whether or not the statute of limitations makes Count Six untimely. As such, MRL has failed to adduce any additional information tending to show that there is a genuine dispute of as to any of these material facts.

Because the defendants have shown that there is no genuine dispute of material fact, and they are entitled to judgment as a matter of law, summary judgment in the defendants' favor is appropriate as to Count Six.

_____

[6] Even if the new six-year statute of limitations could be applied retroactively, MRL still filed out of time. Assuming, *arguendo*, that the statute of limitations was six years, the statute would have run by no later than December, 2012, approximately two months before MRL filed its complaint in this matter.

*MRL Dev. I, Inc. v. Whitecap Inv. Corp.*
Civil No. 2013-48
Memorandum Opinion
Page 48

### B. Cross-Claims

Paradise Lumber and the Putnam Defendants have asserted cross-claims against GSWP.  GSWP has moved for summary judgment on those cross-claims.  GSWP argues that Paradise Lumber and the Putnam Defendants' cross-claims against GSWP for indemnity and contribution fail as a matter of law.  Specifically, GSWP argues that because GSWP cannot be liable to MRL, it cannot be liable to Paradise Lumber or the Putnam Defendants for indemnity. As the Court has determined that the defendants are entitled to summary judgment on all counts of the Complaint, the Court finds GSWP's motion for summary judgment on the indemnity and contribution cross-claims to be moot.

### IV. <u>CONCLUSION</u>

For the reasons discussed herein, the Court finds that summary judgment in the defendants' favor is appropriate on all counts of the Complaint.

An appropriate Judgment follows.

S\_____

**Curtis V. Gómez**
**District Judge**